UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| **URSULA N. WILLIAMS, MELBOURNE POFF, AND BARBARA POFF,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PHH MORTGAGE CORPORATION, itself and** as successor by merger to OCWEN LOAN SERVICING, LLC. <br><br> Defendant. | **Case No. 1:20-cv-09075** |

## CLASS ACTION COMPLAINT

Plaintiffs URSULA N. WILLIAMS, MELBOURNE POFF AND BARBARA POFF on behalf of themselves and all others similarly situated, allege violations of the Texas Fair Debt Collection Act ("TCDA") and breach of contract, against PHH Mortgage Corporation, itself and as successor by merger to OCWEN LOAN SERVICING, LLC ("Defendant" or "PHH").

1.      Borrowers across the country struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay

by phone or online ("Pay-to-Pay fees"). PHH routinely and systematically violates the TDCA and breaches uniform covenants in mortgages insured by the Federal Housing Administration ("FHA") by assessing fees to borrowers that are either not permitted by law or are expressly prohibited by their mortgage agreements. Here, PHH charges borrowers between $10.00–19.50 for making their mortgage payments online or over the phone. On information and belief, only a small fraction of the fee is paid to a third-party payment processor, and PHH collects the remainder as profit.

2.      PHH is one of the largest originators and servicers of mortgages in the United States. PHH abuses its position as a mortgage servicer by charging Pay-to-Pay fees, despite those fees not being expressly authorized in the terms of standard mortgage agreements, in violation of the TDCA.

3.      Moreover, as a servicer of FHA-insured loans, PHH is bound by the rules and regulations of the Secretary of Housing and Urban Development ("HUD"), and those rules are incorporated by reference into all FHA-insured mortgages. Under FHA servicing rules, a mortgage servicer may not charge a borrower any fee not authorized by the FHA. The FHA has not authorized Pay-to-Pay fees.

4.      Each time Plaintiffs made a mortgage payment online or over the phone, PHH collected fees of approximately $7.50–$19.50.

5.      On behalf of themselves and all others similarly situated, Plaintiffs seek injunctive, declaratory, and compensatory relief against PHH for its violations of the

2

Texas Debt Collection Act and breaches of contract.

## PARTIES

6.      Plaintiff Ursula N. Williams is a citizen of the State of Texas.

7.      Plaintiffs Melbourne and Barbara Poff are citizens of the State of Texas.

8.      Defendant PHH Mortgage Corporation is incorporated in and has its principal place of business in the State of New Jersey and is thus a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

9.      PHH conducts business across the country from its principal place of business in this District.

10.     Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiffs' causes of action occurred here and PHH is located here.

11.     Plaintiffs seek to represent two Classes of borrowers with mortgages serviced by PHH that include all borrowers with properties in the State of Texas and all individuals in the United States with FHA-insured loans. Each of these Classes includes members who are citizens of states other than New Jersey. Therefore, minimal diversity exists between the parties in this action.

12.     The amount in controversy, exclusive of costs and interest, exceeds $5,000,000.00. PHH is one of the largest mortgage lender and servicer in the United

States and, more specifically, one of the largest originators and servicers of FHA-insured mortgages. The Classes in this lawsuit are believed to consist of hundreds of thousands of members. To date, Plaintiffs have incurred no less than $15.00 in improper Pay-to-Pay fees, and PHH collects fees in a range of $7.50 to $19.50. Thus, the amount-in-controversy in this action, exclusive of costs and interest, exceeds the amount-in-controversy requirement of 28 U.S.C. § 1332(d).

## COMMON FACTUAL ALLEGATIONS

### The Texas Debt Collection Act

13.     The Texas Debt Collection Act ("TDCA") prohibits a debt collector from "us[ing] unfair or unconscionable means" in the collection of a consumer debt. Tex. Fin. Code § 392.303(a).

14.     PHH is a *debt collector* under the TDCA because it is "a person who directly or indirectly engages in debt collection …." *Id.* at § 392.001(6).

15.     PHH engages in *debt collection*, which the TDCA defines as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5).

16.     A *consumer debt* under the TDCA is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* at § 392.001(2).

17.     As "an individual who has a consumer debt," each Plaintiff is a

4

*consumer* under the TDCA. *Id.* at § 392.001(1).

18.     The Pay-to-Pay fees PHH collects are not authorized by Plaintiffs' deed of trust—or, indeed, any standard deed of trust or mortgage.

19.     By collecting those fees, PHH employed the unfair and unconscionable practice of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" *Id.* at § 392.303(a)(2).

## FHA SERVICING RULES

20.     The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages since its inception in 1934."[2]

21.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

---

[1]     HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on November 27, 2019).

[2] *Id.*

22.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

23.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. 2 at 3, § III.A.1.

24.     PHH is, and has been during the class period, an FHA-approved Mortgagee.

25.     As an FHA-approved Mortgagee, PHH must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, *Handbooks*, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

26.     HUD's servicing requirements restrict the fees and charges an FHA-

---

[3] *Id.*

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees,          Changes          Implemented          8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on June 12, 2020) (emphasis added).

approved Mortgagee may collect from the typically lower-income FHA borrower. Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*, https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on June 12, 2020) (the "FHA Handbook").

27.    In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" *Id.*, at 3, § III.A.

28.    These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

29.    FHA-insured mortgages contain uniform covenants.

30.    In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges **authorized** by the Secretary [of Housing and Urban Development]." Ex. 1 at ¶ 8; Ex. 2 at ¶ 8 (emphasis added).

31.    This provision incorporates by reference HUD's limits on allowable fees.

32.    In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges authorized by the HUD. Ex. 3 at 5, § III.A.1.f.

33.    Specifically, the HUD Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower," and defines "Prohibited Fees and Charges a[s] those

costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id.*, at § III.A.1.f.i.

34.     HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as ***authorized*** by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

35.     A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (2) "based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage"; ***and*** (c) "within the maximum amount allowed by HUD." *Id.* at pp. 5–6, § III.A.1.f.ii.(A) (emphasis added).

36.     Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5]

37.     Pay-to-Pay fees are not on that list.

38.     In the absence of HUD authorization, FHA-approved Mortgagees are prohibited by contract from charging for alleged costs associated with servicing an FHA-insured mortgage.

---

[5] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

39.     Instead, if the FHA-approved Mortgagee wants authorization to collect additional fees and charges, it "may request approval . . . for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." *Id.* at 6, § III.A.1.f.ii.(B).

40.     If the fee or charge is approved, "[t]he Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area." *Id.*

41.     Because Pay-to-Pay fees do not appear on the list of servicing fees and charges and have not been assigned a "maximum amount allowed" based on what HUD deems "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract from collecting them from the FHA borrower.

42.     Moreover, even were an FHA-approved Mortgagee to receive authorization to charge a Pay-to-Pay fee, the charge to the borrower must still be "based on actual cost of the work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

43.     Based upon information and belief, the Pay-to-Pay fees that PHH collects from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## PLAINTIFFS' ALLEGATIONS

44.     Plaintiff Ursula N. Williams executed a standard form FHA deed of trust to purchase her home in Bryan, Texas. Ex. 1.Plaintiffs Melbourne and Barbara Poff executed a standard form FHA deed of trust to purchase their home in Pointblank, Texas. Ex. 2.

45.     PHH Mortgage Corporation was the original lender on Plaintiff Williams' FHA deed of trust.

46.     PHH negotiated with the FHA for an assignment of servicing rights and took an assignment of rights on the loan of Plaintiffs Melbourne and Barbara Poff. In doing so, PHH agreed to collect only fees authorized by the deed of trust.

47.     Under the FHA deed of trust section, PHH is an assignee of the mortgage who is bound by all covenants therein.

48.     Plaintiffs' form FHA-insured deeds of trust, entitled "Fees," states, "Lender may collect fees and charges *authorized* by the Secretary [of Housing and Urban Development]." Ex. 1, ¶ 8; Ex. 2, ¶ 8 (emphasis added).

49.      Furthermore, Plaintiffs' form FHA-insured deeds of trust provide further that "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." Ex. 1, ¶ 14; Ex. 2, ¶ 14.

50.     As alleged above, the TDCA and FHA rules prohibit charging Pay-to-Pay fees.

10

51.    And even if a servicer had authorization to collect such a fee, FHA rules prohibit FHA-approved mortgage lenders and servicers from passing on to borrowers more than the out-of-pocket costs for providing the service.

52.    On information and belief, which can be confirmed through review of Defendants' documents, PHH reaps substantial profits from imposing illegal Pay-to-Pay fees. It is believed the cost of the Pay-to-Pay transactions is approximately $0.40 to PHH, while it up-charges Plaintiffs and others $7.00 to $19.50 per transaction.

53.    PHH Mortgage Corporation has collected at least one Pay-to-Pay fee of at least $7.50 from Plaintiffs.

54.    Ocwen Loan Servicing, LLC, has collected at least one Pay-to-Pay fee of approximately $15.00 from Plaintiffs Melbourne and Barbara Poff.

55.    Those fees violate the TDCA and FHA rules.

## CLASS ALLEGATIONS

56.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, and predominance requirements of Rule 23(a).

57.    Plaintiffs seek certification of the following classes (collectively, the "Classes"):

**The Texas Debt Collection Practices Act Class (the "TDCA Class")**

All persons (1) who have or had a residential mortgage loan, secured by their residence located in the State of Texas, (2) that is or was serviced by PHH, (3) who were charged one or more Pay-to-Pay fee, and (4) whose Security Instrument did not expressly authorize the collection of a Pay-to-Pay fee.

**The FHA Pay-to-Pay Class (the "FHA Pay-to-Pay Class")**:

All persons in the United States (1) with an FHA-insured mortgage (2) that is or was serviced by PHH (3) who were charged one or more Pay-to-Pay fee, and (4) whose mortgages contained language the same as or substantially similar to the uniform covenants in the Security Instrument.

58.     Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

59.     Excluded from the Classes are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

60.     The members of the Classes are so numerous that joinder is impractical. While the exact number of members of the Classes cannot be determined without discovery, Plaintiffs believe that the Classes consist of thousands of members, the identity of whom, upon information and belief, can be readily determined upon

review of records maintained by Defendant.

61.     Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same acts of PHH, namely collecting fees from borrowers that are not authorized by contract or permitted by Texas law. Plaintiffs have suffered the harms alleged and has no interests antagonistic to the interests of any other member of the Classes.

62.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

63.     The predominating common questions of law and fact include:

a.     Whether, and in what amount, PHH may collect a Pay-to-Pay fee from borrowers with FHA-insured deeds of trust and mortgages (collectively, "Security Instruments");

b.     Whether collecting such fees violates HUD rules and regulations;

c.     Whether collecting such fees violates provisions of the Plaintiffs' Security Instrument;

d.     Whether collecting Pay-to-Pay fees violates the Texas Debt Collection Act;

e.     What is the proper method or methods by which to measure damages caused by PHH's breaches of the standard terms of FHA Security Instruments;

f.      What is the proper method or methods by which to measure damages caused by PHH's violations of the TDCA; and

g.      Whether PHH should be enjoined from further collections, or attempted collections, of Pay-to-Pay fees from members of the Classes.

64.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the members of the Classes.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each of the Class Member's claims are small relative to the complexity of the litigation, and due to the financial resources of PHH, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and PHH's misconduct will proceed without remedy.

66.     Even if members of the Classes could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for

inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

67.     Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Classes as a whole.

## CLAIMS FOR RELIEF

### <u>COUNT I: Violation of the Texas Debt Collection Act</u>
(On behalf of the TDCA Class)

68.     Plaintiffs incorporate paragraphs 1 through 67.

69.     Plaintiffs' deeds of trust secure the notes they took out to purchase their residences in the State of Texas. Each Plaintiff, therefore, is a "consumer" under the TDCA who took out a "consumer debt."

70.     PHH, in its own right and as successor by merger to Ocwen Loan Servicing, LLC, is a "debt collector" under the TDCA.

71.     In the process of "debt collection," PHH collected from Plaintiffs Pay-to-Pay fees that were incidental to their debt obligation and which were not expressly authorized by the agreement creating the obligation.

72.     As such, PHH employed unfair and unconscionable means in the

collection of a consumer debt, in violation of the TDCA.

73.     On behalf of the TDCA Class, Plaintiffs seek an injunction restraining PHH from charging Pay-to-Pay fees as well as actual damages.

## COUNT II: Breach of Contract
### (On behalf of the FHA Pay-to-Pay Class)

74.     Plaintiffs incorporate paragraphs 1 through 73.

75.     Plaintiffs and members of the FHA Pay-to-Pay Class have FHA-insured security instruments that are or were serviced by PHH.

76.     Plaintiffs performed all conditions precedent to enforcing the terms of their Security Instrument.

77.     PHH improperly collected Pay-to-Pay fees contrary to the express terms of their contract.

78.     Moreover, the Pay-to-Pay fees PHH collected exceeded its out-of-pocket costs by several hundred percent.

79.     As a proximate cause of that breach, Plaintiffs and members of the FHA Pay-to-Pay Class have paid fees that should not have been collected from them and which PHH was not entitled to collect.

80.     On behalf of the FHA Pay-to-Pay Class, Plaintiffs seek declaratory, injunctive, and compensatory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that this Court:

1.      Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23, that Plaintiffs are proper class representatives, and that their counsel are appointed Class Counsel;

2.      Award compensatory damages and restitution in the amount of all Pay-to-Pay fees collected from the TDCA Class and the FHA Pay-to-Pay Class, and interest on those fees, improperly collected from members of those Classes;

3.      Award actual damages in an amount according to proof;

4.      Award injunctive relief requiring Defendant to cease collection of all Pay-to-Pay fees that have been charged to, but not yet paid by, Plaintiffs and members of the Classes;

5.      Award injunctive relief to enjoin Defendant's wrongful acts and further violations of Plaintiffs' and the Classes' rights, including but not limited to requiring Defendant to implement procedures to ensure it ceases charging the improper fees identified in this Complaint;

6.      Award pre-judgment interest at the maximum rate permitted by applicable law;

7.      Enter a declaratory judgment that Defendant, through its wrongful

actions, has kept and continues to keep for itself, benefits that are due and owed to

Plaintiffs and members of the Classes;

8.    Award reasonable attorneys' fees and costs pursuant to applicable law;

and

9.    Award such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs and members of the Classes hereby request a trial by jury.

Dated: July 17, 2020

> */s/ Patricia M. Kipnis*
> Patricia M. Kipnis, N.J. Bar No. 016962003
> BAILEY GLASSER LLP
> 923 Haddonfield Road, Suite 307
> Cherry Hill, NJ 08002
> 856.324.8219
> pkipnis@baileyglasser.com
>
> Randall K. Pulliam (*to be admitted pro hac vice*)
> E. Lee Lowther III (*to be admitted pro hac vice*)
> 519 W. 7th Street
> Little Rock, AR 72201
> 501.312.8505
> rpulliam@cbplaw.com
> llowther@cbplaw.com