*EXHIBIT 2*

07- 7633

31299

After recording please return to:
WORLDWIDE MORTGAGE COMPANY

*[Company Name]*

*[Name of Natural Person]*
15400 KNOLL TRAIL 401

*[Street Address]*
DALLAS, TX 75248

*[City, State Zip Code]*

_____ *[Space Above This Line For Recording Data]* _____

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# TEXAS DEED OF TRUST

FHA Case No.
493-8402230-703

MIN: 100374007071100128

THIS DEED OF TRUST ("Security Instrument") is made on August 23, 2007. The grantor is MELBOURNE L. POFF JR and BARBARA JEAN POFF, husband and wife as community property

whose address is 13502 WEIMAN RD #12, HOUSTON, TX 77041
("Borrower").

The trustee is NANCY J. SCHRIEDEL

whose address
680 N. CARROLL AVE. STE. 100, SOUTHLAKE, TX 76092 ("Trustee").
The lender is WORLDWIDE MORTGAGE COMPANY

which is
organized and existing under the laws of Texas, and whose address is
5057 KELLER SPRINGS RD 300, ADDISON, TX 75001 ("Lender").
The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Borrower owes Lender the principal sum of
Loan No: 10501370

| Texas FHA Texas Security Instrument (MERS Modified) | | Closing |
|---|---|---|
| The Compliance Source, Inc. | Page 1 of 10 | 54301TX 02/02 Rev. 04/07 |
| www.compliancesource.com | | ©2007, The Compliance Source, Inc. |

Lester Brown
United Title of Texas
8600 Freeport Pkwy
Suite 400
Irving, TX 75063



**31300**

one hundred ninety three thousand four hundred seventy two and NO/100th Dollars (U.S. $ 193,472.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2037 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably warrants grants and conveys to Trustee, in trust, with power of sale, the following described property located in
SAN JACINTO County, Texas:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 221 KEY LARGO LOOP
*[Street]*
POINTBLANK , Texas 77364 ("Property Address"):
*[City]* *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by

31301

the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C.§ 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order of Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Loan No: 10501370

Texas FHA Texas Security Instrument (MERS Modified)  
The Compliance Source, Inc.  
www.compliancesource.com

Page 3 of 10

Closing  
54301TX 02/02 Rev. 04/07  
©2007, The Compliance Source, Inc.



31302

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

Loan No: 10501370

| Texas FHA Texas Security Instrument (MERS Modified) | | Closing |
|---|---|---|
| The Compliance Source, Inc. | Page 4 of 10 | 54301TX 02/02 Rev. 04/07 |
| www.compliancesource.com | | ©2007, The Compliance Source, Inc. |



**31303**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security

Loan No: 10501370

| Texas FHA Texas Security Instrument (MERS Modified) | | Closing |
|---|---|---|
| The Compliance Source, Inc. | Page 5 of 10 | 54301TX 02/02 Rev. 04/07 |
| www.compliancesource.com | | ©2007, The Compliance Source, Inc. |



**31304**

Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Loan No: 10501370
Texas FHA Texas Security Instrument (MERS Modified)   Closing
The Compliance Source, Inc.   Page 6 of 10   54301TX 02/02 Rev. 04/07
www.compliancesource.com   ©2007, The Compliance Source, Inc.



31305

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18 including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Paragraph 18, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

Loan No: 10501370

Texas FHA Texas Security Instrument (MERS Modified)  
The Compliance Source, Inc.      Page 7 of 10      Closing  
www.compliancesource.com      54301TX 02/02 Rev. 04/07  
©2007, The Compliance Source, Inc.



31306

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** *[Check box as applicable.]*

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**24. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Paragraph 24.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. *[Check applicable box(es).]*

☐ Condominium Rider            ☐ Graduated Payment Rider   ☒ Other [specify]
☐ Planned Unit Development Rider ☐ Growing Equity Rider     Renewal and Extension Exhibit,
                                                             Manufactured Housing Unit Rider
                                                             to Security Instrument

Loan No: 10501370

Texas FHA Texas Security Instrument (MERS Modified)                                           Closing
The Compliance Source, Inc.                   Page 8 of 10                      54301TX 02/02 Rev. 04/07
www.compliancesource.com                                                 ©2007, The Compliance Source, Inc.

31307

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Donna C Isaac_

Printed Name: _____ *[Please Complete]*

Printed Name: _____ *[Please Complete]*

_Melbourne L. Poff Jr_ (Seal)
MELBOURNE L. POFF JR   -Borrower
                       *[Printed Name]*

_Barbara Jean Poff_ (Seal)
BARBARA JEAN POFF   -Borrower
                    *[Printed Name]*

_____ (Seal)
                       -Borrower
                       *[Printed Name]*

_____ (Seal)
                       -Borrower
                       *[Printed Name]*

———————— *[Acknowledgment on Following Page]* ————————

**ACKNOWLEDGMENT**

31308

State of Texas §
County of Harris§ §
~~SAN JACINTO~~ §

Before me, The undersigned, a Notary Public, on this day personally appeared MELBOURNE L. POFF JR and BARBARA JEAN POFF

_____ known to me (or proved to me on the oath of _____ or through TX. Drivers License [description of identity card or other document]) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 27th day of August, A.D., 2009.

_____
Signature of Officer  [Printed Name]

Donna C. Isaacs
_____
Title of Officer

(Seal)

> DONNA C. ISAACS
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. March 6, 2011

My Commission Expires:

Loan No: 10501370

Texas FHA Texas Security Instrument (MERS Modified)  Closing
The Compliance Source, Inc.  Page 10 of 10  54301TX 02/02 Rev. 04/07
www.compliancesource.com  ©2007, The Compliance Source, Inc.

**31309**

Loan No: 10501370 POFF

### EXHIBIT "A" – LEGAL DESCRIPTION – PAGE 1 of 1

LOT 83 OF WOODLAND SHORES OF HOLIDAY VILLAGES OF LIVINGSTON SUBDIVISION, SECTION A OF SAN JACINTO COUNTY, TEXAS, AS SHOWN BY THE MAP OR PLAT RECORDED IN VOLUME 303, PAGE 782, OFFICIAL PUBLIC RECORDS OF SAN JACINTO COUNTY, TEXAS.

# RENEWAL AND EXTENSION EXHIBIT 31310
## TO BE ATTACHED TO THE DEED OF TRUST

MIN: 100374007071100128

This Renewal and Extension Exhibit is incorporated into and shall amend and supplement the Security Instrument of even date herewith. The Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows:

```
Residential Construction Note and Residential Construction Contract in the
amount of $  118,733.00 executed by MELBOURNE L. POFF JR and BARBARA JEAN
POFF payable to the order of FALCONVIEW HOMES securing the property
described thereon, and is or will be filed of record in the Real Property
Records of SAN JACINTO County, Texas.
```

Lender is expressly subrogated to all rights, liens, equities and remedies securing the original holder(s) of the above debt(s) and the original lien(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness. Borrower acknowledges that the lien(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender.

This renewal and extension is not a refinance of a debt any portion of which is an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.

In addition to the refinance of principal and any interest, if Lender is advancing all or a portion of the costs necessary to refinance debt on the Property, Borrower acknowledges that these costs are reasonable and necessary costs to refinance such debt. Borrower has received no funds from this Loan, but only the benefit of those sums advanced for the payment of 1) principal and any interest on loans being refinanced, 2) any reasonable and necessary closing costs, and 3) any refund to Borrower of closing costs escrowed in connection with the Loan advanced by Borrower. If any portion of the Loan secures a debt for work or material used in constructing improvements on the Property, Borrower understands that funds not used in such construction, if any, must first be used to reduce the unpaid principal of the Loan or, at Lender's option, the Note must be modified to evidence the actual funds advanced.

Loan No: 10501370

Renewal and Extension Exhibit (Texas)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 1



04505TX 08/98 Rev. 08/04
©2004, The Compliance Source, Inc.

**31311**

FHA/VA CASE NO: 493-8402230-703
MIN: 100374007071100128

(Attach to Security Instrument)

# MANUFACTURED HOUSING UNIT RIDER TO THE
# MORTGAGE / DEED OF TRUST / SECURITY INSTRUMENT
(Manufactured Housing Unit to Become Affixed)

THIS RIDER is made this 23rd day of August, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage/Deed of Trust/Security Instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to WORLDWIDE MORTGAGE COMPANY

(the "Note Holder")

of the same date (the "Note") and covering the land described in the Security Instrument as:

LOT 83 OF WOODLAND SHORES OF HOLIDAY VILLAGES OF LIVINGSTON SUBDIVISION, SECTION A OF SAN JACINTO COUNTY, TEXAS, AS SHOWN BY THE MAP OR PLAT RECORDED IN VOLUME 303, PAGE 782, OFFICIAL PUBLIC RECORDS OF SAN JACINTO COUNTY, TEXAS.

*[Legal Description]*

which currently has the address of:

221 KEY LARGO LOOP, POINTBLANK, TX 77364

*[Property Address]*

together with the Manufactured Housing Unit described as follows which shall be a part of the real property:
Make: TXAD
Model: GALAXY 593
Year: 2007
Serial Number(s): QC010818759A/B
Width & Length: 28 x 54

**LAND AND HOME MATTERS.** Owner acknowledges that the land and manufactured home covered by this Security Instrument are to be treated as real property for all purposes under Texas law and that the parties have elected to not be governed by Chapter 347 of the Texas Finance Code.

**MODIFICATIONS.** In addition to the covenants and agreements made in the Security Instrument, Borrower(s) further covenant and agree as follows, for themselves, their heirs and assigns to the Note Holder:

Loan No: 10501370

Manufactured Housing Unit Rider to the Mortgage/Deed of Trust/Security Instrument
(Manufactured Housing Unit to Become Affixed) (Texas)
—THE COMPLIANCE SOURCE, INC.— Page 1 of 2 87678TX 11/03
www.compliancesource.com ©2003, The Compliance Source, Inc.

31312

**A.** **Property:**

Property shall encompass the Manufactured Housing Unit described above that is or that will become affixed to the land legally described herein.

**B.** **Additional Covenants of Borrower(s):**

(a) Borrower(s) covenant and agree that Borrower(s) will comply with all State and local laws and regulations regarding the affixation of the Manufactured Housing Unit to the land described herein including, but not limited to, surrendering the Certificate of Title (if required) and obtaining the requisite governmental approval and accompanying documentation necessary to classify the Manufactured Housing Unit as real property under State and local law.

(b) That the Manufactured Housing Unit described above shall be, at all times, and for all purposes, permanently affixed to and part of the land legally described herein and shall not be removed from said land.

(c) Borrower(s) covenant that affixing the Manufactured Housing Unit to the land legally described herein does not violate any zoning laws or other local requirements applicable to manufactured homes.

(d) In the event state or local law does not provide for a surrender of title, Borrower grants Lender a security interest in the Manufactured Housing Unit and shall execute such documents as Lender may request to evidence Lender's security interest therein.

BY SIGNING THIS, Borrower(s) agree to all of the above.

_____ (Seal)
MELBOURNE L. POFF JR                -Borrower

_____ (Seal)
BARBARA JEAN POFF                   -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

Loan No: 10501370

Manufactured Housing Unit Rider to the Mortgage/Deed of Trust/Security Instrument
(Manufactured Housing Unit to Become Affixed) (Texas)
—THE COMPLIANCE SOURCE, INC.—  Page 2 of 2    87678TX 11/03
www.compliancesource.com                                            ©2003, The Compliance Source, Inc.

31313

FHA Case No. 493-8402230-703

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd day of August, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to   WORLDWIDE MORTGAGE COMPANY

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
221 KEY LARGO LOOP, POINTBLANK, TX 77364
*[Property Address]*

The Property Address is a part of a planned unit development ("PUD") known as
HOLIDAY VILLAGES OF LIVINGSTON

*[Name of Planned Unit Development]*

**PUD COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage" and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

―――――――――――――――――――[Signatures on Following Page]――――――――――――――――――

Loan No: 10501370   MIN: 100374007071100128
FHA Planned Unit Development Rider (Multistate)
—THE COMPLIANCE SOURCE, INC.—   Page 1 of 2      54504MU 02/99 Rev. 05/04
www.compliancesource.com   ©2004, The Compliance Source, Inc.

31314

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)  _____ (Seal)
MELBOURNE L. POFF JR       -Borrower       BARBARA JEAN POFF         -Borrower

_____ (Seal)  _____ (Seal)
                           -Borrower                                  -Borrower

―――――――――― [Space Below This Line For Acknowledgment] ――――――――――

STATE OF TEXAS
COUNTY OF SAN JACINTO
I, Angelia Steele, hereby certify that this instrument was FILED in number sequence on the date and time stamped hereon by me, and was duly RECORDED in the OFFICIAL PUBLIC RECORDS of San Jacinto County, Texas, as stamped hereon by me on

OCT 11 2007

ANGELIA STEELE
COUNTY CLERK
SAN JACINTO COUNTY, TEXAS

FILED FOR RECORD

2007 OCT 11 AM 8 40

Angelia Steele
COUNTY CLERK
SAN JACINTO COUNTY, TEXAS

Loan No: 10501370
FHA Planned Unit Development Rider (Multistate)
—THE COMPLIANCE SOURCE, INC.—     Page 2 of 2     54504MU 02/99 Rev. 05/04
www.compliancesource.com                          ©2004, The Compliance Source, Inc.