United States District Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| URSULA N. WILLIAMS, *et al*, | § § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-cv-04018 |
| Plaintiffs, | | |
| vs. | | JUDGE CHARLES ESKRIDGE |
| PHH MORTGAGE CORPORATION, | | |
| Defendant. | | |

**OPINION AND ORDER
GRANTING MOTION TO DISMISS IN PART**

The motion by Defendant PHH Mortgage Corporation to dismiss is granted in part and denied in part. Dkt 63. It is granted as to the claim for declaratory and injunctive relief under 28 USC §§ 2201 and 2202. It is denied as to the claim asserted under the Texas Debt Collection Act.

1. Background

Plaintiff Ursula N. Williams executed a standard form Federal Housing Administration deed of trust in January 2010 to purchase her home in Bryan, Texas. PHH was the original lender on Williams' FHA deed of trust. Dkt 60 at ¶¶ 44–45; Dkt 60-1.

Plaintiffs Melbourne and Barbara Poff executed an FHA deed of trust in August 2007 to purchase their home in Point Blank, Texas. Ocwen Loan Servicing LLC serviced the Poffs' mortgage until it transferred servicing to PHH. Dkt 60 at ¶¶ 44, 46; Dkt 60-2.

The FHA deeds of trusts executed by Plaintiffs both state, "Lender may collect fees and charges authorized by the Secretary," with the latter term referring to the Secretary of the United States Department of Housing and Urban Development.

Dkt 60 at ¶ 48; see Dkts 60-1 at ¶ 8, and 60-2 at ¶ 8. The deeds of trusts further provide, "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." Dkt 60 at ¶ 49; see Dkts 60-1 at ¶ 14, and 60-2 at ¶ 14.

Plaintiffs allege that each time they "made a mortgage payment online or over the phone, PHH collected fees of approximately $7.50–$19.50." Dkt 60 at ¶ 4. They further allege that PHH "collected at least one Pay-to-Pay fee of at least $7.50 from Plaintiffs," and that Ocwen "collected at least one Pay-to-Pay fee of approximately $15.00" from the Poffs before transferring its servicing duties to PHH. Id at ¶¶ 53–54. But, Plaintiffs claim, it only costs PHH forty cents to process such transactions. Id at ¶ 52. And so they argue that such fees are prohibited by the Texas Debt Collection Act and the rules and regulations of the HUD Secretary that apply to FHA loans. Id at ¶¶ 13–43. But even if the fees were permissible, Plaintiffs still argue that "FHA rules prohibit FHA-approved mortgage lenders and servicers from passing on to borrowers more than the out-of-pocket costs for providing the service." Id at ¶ 51.

Plaintiffs initially brought this class action against PHH in the United States District Court for the District of New Jersey in July 2020. Dkt 1. PHH moved to dismiss pursuant to Rule 12(b)(6), but that motion was denied for failure to comply with the court's rules. Dkts 7, 8. The action was then transferred to this Court in November 2020. Dkts 38, 39.

Plaintiffs filed their operative amended complaint in January 2020. Dkt 60. It includes class action claims under the Texas Debt Collection Act and for declaratory and injunctive relief under 28 USC §§ 2201 and 2202. Plaintiffs seek to certify a "TDCA class" and an "FHA Pay-to-Pay Subclass." Id at ¶¶ 56–67. By way of remedy for their TDCA claims, Plaintiffs seek "an injunction restraining PHH from charging Pay-to-Pay fees as well as actual damages." Id at ¶ 73. Plaintiffs further seek equitable relief pursuant to 28 USC §§ 2201 and 2202 in the form of a declaration that the so-called *pay-to-pay* fees are prohibited by HUD regulations, an injunction requiring PHH to comply with

the TDCA, disgorgement of all pay-to-pay fees collected by PHH, and their costs. Id at ¶¶ 76–79.

PHH again moves to dismiss all of the class-action claims pursuant to Rule 12(b)(6). Dkt 63. The Court heard argument on the motion. Minute Entry of 04/28/2021.

2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 557.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (2019). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and its

3

attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014).

### 3. Analysis

The Texas Debt Collection Act is part of the Texas Finance Code. Its essential purpose "is to limit coercive and abusive behavior by all those seeking to collect debts." *Barzelis v Flagstar Bank, FSB*, 784 F3d 971, 977 (5th Cir 2015).

Section 392.303(a)(2) of the Texas Finance Code prohibits debt collectors from using *unfair or unconscionable means* that employ several enumerated practices, including that of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

This Court recently denied a Rule 12(b)(6) motion to dismiss a similar TDCA claim also brought by Williams against another mortgage loan servicing company. *Williams v Lakeview Loan Servicing LLC*, --- F Supp 3d ---, 2020 WL 7632257 (SD Tex 2020). PHH respectfully acknowledges that opinion, while asking the Court to "reconsider its position for purposes of this case" based on authorities and arguments that the defendants in *Lakeview* didn't present. Dkt 63 at 15.

#### a. Statute of limitations

PHH asserts that the TDCA has a two-year statute of limitations that runs from the date of the alleged violation regardless of when the Plaintiffs discovered it. Id at 13 (citations omitted). PHH thus argues that the TDCA claims by Williams are barred because she most recently paid a convenience fee in January 2017 but didn't bring action until July 2020. Id at 14, citing Dkt 7-15. It also argues that the Poffs made three convenience fee payments in 2017, so the TDCA limitations period for those also expired in 2019. Dkt 63 at 14, citing Dkt 7-16. Plaintiffs respond that their claims aren't barred because the TDCA "lacks an express limitations period," so "Texas's four-year residual statute of limitations applies." Dkt 64 at 10.

4

Section 16.051 of the Texas Civil Practices and Remedies Code provides, "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." And at least two federal district courts in Texas have concluded that TDCA claims brought without a DTPA tie-in provision are subject to a four-year statute of limitations. See *Vine v PLS Financial Services, Inc*, 2018 WL 456031, *17. (WD Tex 2018); *Roe v Totleca Enterprises*, 2018 WL 1900532, *4 (ED Tex).

But the Fifth Circuit has held that the TDCA has a two-year statute of limitations. See *Clark v Deutsche Bank National Trust Co*, 719 F Appx 341, 343 (5th Cir 2018, *per curiam*); see also *Bartolowits v Wells Fargo Bank, NA*, 731 F Appx 253, 258 (5th Cir 2018, *per curiam*) (affirming dismissal of TDCA claims on summary judgment "based on the TDCA's two-year statute of limitations"). In doing so, it cited § 16.003 of the Texas Civil Practices and Remedies Code, which provides in relevant part that "a person must bring suit for trespass for injury to the estate . . . not later than two years after the day the cause of action accrues." A number of federal courts have relied on this determination to reach the same conclusion. See *Cao v BSI Financial Services*, 2020 WL 6800331, *14–15 (SD Tex) (citations omitted), adopted in relevant part by *Cao v BSI Financial Services*, 2020 WL 5568656 (SD Tex); *Onabajo v Household Financial Corp III*, 2018 WL 6739070, *9 (WD Tex) (citations omitted), adopted by 2019 WL 2565247 (WD Tex), affirmed by 795 F Appx 258 (5th Cir 2020, *per curiam*); *Leonard v JPMorgan Chase Bank, NA*, 2018 WL 3275443, *5 (ND Tex) (citation omitted), adopted by 2018 WL 1180243.

Controlling Fifth Circuit precedent will, of course, be applied here once the issue is ripe for determination. But a court should dismiss based on the statute of limitations only if that bar to relief appears on the face of the complaint or other appropriately considered materials. *Garrett v Commonwealth Mortgage Corp of America*, 938 F2d 591, 594 (5th Cir 1991). Nothing on the face of Plaintiffs' complaint supports the limitations defense as characterized by PHH, and the documents it cites are exhibits to

5

a prior motion to dismiss that was denied. See Dkt 63 at 14, citing Dkts 7-15, 7-16. Those documents aren't appropriate to consider at this juncture. See *Brand Coupon Network*, 748 F3d at 635.

The TDCA claims won't be dismissed on limitations at present. But there will be immediate, expedited discovery on this issue, followed by summary judgment practice if determined supportable in good faith by PHH. A separate order will follow in that regard.

> b. TDCA claim

PHH argues that the convenience fees it charged Plaintiffs to use its optional payment method didn't violate the TDCA. Dkt 63 at 14–24. In support of this overarching argument, PHH raises several sub-arguments regarding various elements of a TDCA claim.

*First,* PHH argues that Plaintiffs can't bring a TDCA claim because neither PHH nor Ocwen "collected" or "attempted to collect" the alleged convenience fees at issue. Dkt 63 at 15–17. A fee is only "collected" under the TDCA, PHH argues, "if, after it is initially charged but not paid, it is subsequently demanded for payment." Id at 16.

PHH supports this argument by citation to *CPS Energy v Public Utility Commission of Texas*, 537 SW3d 157, 189–90 (Tex App—Austin 2017), revd in part on other grounds sub nom *Time Warner Cable Texas LLC v CPS Energy*, 593 SW3d 291 (Tex 2019). The court there grappled with the different meanings of *charge* and *collect* under the Texas Public Utility Regulatory Act. The court said *collect* means to "to present as due and receive payment for." *CPS Energy*, 537 SW3d at 190, citing *Webster's Third New International Dictionary* 444 (2002). But it also acknowledged that *collect* can mean "to receive money, to get paid." Id at 190, citing *The Compact Oxford English Dictionary* 286 (2d ed 1994). To distinguish *charge* from *collect* under PURA, the court cited the definition of *debt collection* under the TDCA as an example of the distinction that "creditors file suit to collect payment from their debtors, whom they have previously charged for a good or service." *CPS Energy*, 537 SW3d at 190. The court, however, didn't attempt to define either term under the TDCA and

ultimately determined that "a duty to 'charge' a uniform rate differs from a duty to 'collect' a uniform rate" under PURA. Ibid.

Reliance on *CPS Energy* isn't appropriate. The court there presented two equally valid definitions of *collect*. One favors PHH's position here ("to present as due and receive payment for"), while the other favors Plaintiffs ("to receive money, to get paid"). The court in no way made a definitive, one-size-fits-all selection applicable across all statutes, and instead cabined its analysis to collecting rates in the context of utilities.

But even if *collect* under PURA favors the PHH position, nothing establishes that such meaning is automatically imputed to the same term under the TDCA. For instance, consider a different statute hypothetically prohibiting visitors to Texas beaches from *collecting* seashells? That assuredly is a different context carrying a different meaning than *collecting* a sales tax under a different statute. Similarly, there's no reason to believe that *collecting* a uniform electricity rate under PURA should necessarily mean the same thing as *collecting* a debt under the TCDA. The United States Supreme Court instructs that when "ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp v Cartier*, 486 US 281, 291 (1988) (citations omitted). Yet PHH's argument depends upon the meaning of *collect* remaining constant while the statutory contexts of its use dramatically change.

PHH also cites a number of decisions that define *collect* under the FDCPA. Dkt 63 at 16–17, citing *Duncan v Asset Recovery Specialists, Inc*, 907 F3d 1016, 1017–18 (7th Cir 2018), *Mann v Management Enterprises, Inc*, 2005 WL 8163297, \*1 (CD Ill), and *Lewis v ACB Business Services, Inc*, 911 F Supp 290, 292–93 (SD Ohio 1996), affd, 135 F3d 389 (6th Cir 1998). But PHH doesn't explain how the analysis in those cases applies to the TDCA. It doesn't even cite the relevant FDCPA provisions. Instead, PHH merely argues that some courts have held that *collect* has a particular meaning under the FDCPA and that this Court should just apply that same meaning under the TDCA as if the statues are one and the same. But Plaintiffs here, like Williams in *Lakeview*, have sufficiently identified the exact means by which

7

PHH (and Ocwen before it) *collected* an allegedly unauthorized fee incidental to their deeds of trust. See --- F Supp 3d ---, 2020 WL 7632257 at * 2, citing *Barnett v Caliber Home Loans*, 2020 WL 5494414, *3–4 (SD Tex). For example, the complaint alleges, "Each time Plaintiffs made a mortgage payment online or over the phone, PHH collected fees of approximately $7.50–$19.50." Dkt 60 at ¶ 4. PHH therefore allegedly "collected at least one Pay-to-Pay fee of at least $7.50," while Ocwen allegedly "collected at least one Pay-to-Pay fee of approximately $15.00." Id at ¶ 54. And Plaintiffs allege that the fees weren't expressly authorized "by HUD regulations," their respective deeds of trust, or "any standard deed of trust or mortgage." Id at ¶ 18.

*Second,* PHH argues that convenience fees don't violate § 392.303(a)(2) of the TDCA because they aren't "incidental to" underlying loans. Dkt 63 at 17–21. This Court has previously addressed this exact same argument and concluded to the contrary. *Lakeview*, --- F Supp 3d ---, 2020 WL 7632257 at *3. PHH cites a number of cases interpreting the FDCPA to suggest that convenience fees aren't incidental to the underlying mortgage obligation. Dkt 63 at 17–21. Such cases, PHH notes, define *incidental to* as "naturally attaching to" another thing. But as noted in *Lakeview*, every federal district court in Texas to consider the issue has reached the opposite conclusion as to the TDCA, and no Texas state court has said otherwise. Regardless, a better definition of *incidental to* is "happening by chance and subordinate to some other things; peripheral." Bryan A. Garner, A Dictionary of Modern Legal Usage, 286 (Oxford 1987). And indeed, the term *incidental* on its own is most naturally read as "accompanying but not a major part of something." Angus Stevenson and Christine A. Lindberg, eds, *New Oxford American Dictionary* 878 (Oxford 3d ed 2010)

*Third,* PHH argues that its convenience fees are "legally chargeable" under Texas contract law and are also "permitted by state and federal statutes and regulations." Dkt 63 at 21–24. PHH argues that its "optional convenience fees are chargeable under common-law contractual principles" and that it and Ocwen "entered into valid contracts with borrowers for these optional expedited payment services each time they were used." Id at 22.

This argument was also before Judge Morales in *Dees v Nationstar Mortgage, LLC*, --- F Supp 3d ---, 2020 WL 6749036 (SD Tex). He concluded that it "presents questions of fact that are better suited in a motion for summary judgment." Id at *3 (citations omitted). The Court cited *Dees* five times in *Lakeview*, and it would have adopted its analysis as to legal chargeability as well if it had been raised. See --- F Supp 3d ---, 2020 WL 7632257 at *2–3. The reasoning in *Dees* will again be followed here.

*Fourth,* PHH argues for dismissal under state contract law by noting that it "entered into a consent judgment with 49 states (including Texas), which implicitly recognizes that convenience fees are permissible." Dkt 63 at 23, citing Dkt 63-1. But as Plaintiffs note, that consent judgment plainly states that the "servicing standards set forth in this Agreement . . . are expressly subject to, and shall be interpreted in accordance with . . . applicable federal, state, and local laws, rules, and regulations . . . the terms of the applicable mortgage loan documents," and any servicing agreements. Dkt 63-1 at 59–60. This makes it far from clear how the consent judgment absolves PHH from liability here as a matter of law because it's not clear that the TDCA allows it to collect convenience fees. Beyond this, the Texas Attorney General can't change the meaning of a statute. The legislative power in Texas (as with the United States) is vested in a Senate and House of Representatives. See Tex Const Art III, § 1. This includes "the power to set public policy" and "the power to provide the details of the law, to promulgate rules and regulations to apply the law, and to ascertain conditions upon which existing laws may operate." *FM Properties Operating Co v City of Austin*, 22 SW3d 868, 873 (Tex 2000) (citations omitted). By contrast, no legislative power is vested in the Texas Attorney General. See Tex Const Art IV, § 22.

*Fifth,* PHH cites the Electronic Fund Transfers Act, Truth in Lending Act, a Department of Veterans Affairs regulation regarding vendee loans, and a regulation issued by the Federal Trade Commission regarding the FDCPA. Dkt 63 at 23–24. It's true that Texas courts "often interpret the TDCA in accordance with the FDCPA." *Caldwell v Freedom Mortgage Corp*, 2020 WL 4747497, *3 n 4 (ND Tex). But the two statutes and the VA

regulation aren't related to the FDCPA. And the latter FTC regulation contains specific language regarding convenience fees that's conspicuously absent from the TDCA.

*Sixth,* PHH also filed a notice of supplemental authority on the recent decision of *Thomas-Lawson v Carrington Mortgage Services, LLC*, 2021 WL 1253578 (CD Cal). Dkt 69. It cites *Thomas-Lawson* for the proposition that convenience fees are "permitted by law" because they are "agreed to in separate agreements in exchange for entirely optional payment methods." Id at 2–3. But the plaintiffs there conceded that whether the defendant violated the FDCPA was determinative of whether it also violated the TDCA and a number of other state statutes. *Thomas-Lawson*, 2021 WL 1253578 at *6. The decision thus gives no substantive analysis in that regard on a point Plaintiffs here haven't conceded. Beyond this, it appears that *Thomas-Lawson* simply determined that pay-to-pay fees don't "*per se* violate § 1692f(1)"—without holding that such fees could *never* violate the FDCPA (much less the TDCA) under some circumstances. Ibid.

In the absence of any authority finding that the fees at issue here are *legally chargeable* under the TDCA, Plaintiffs have sufficiently pleaded (at this stage) that the fees PHH and Ocwen charged them weren't expressly authorized by their deed of trust or otherwise legally chargeable. See *Williams*, --- F Supp 3d ---, 2020 WL 7632257, *3, citing *Dees*, 2020 WL 6749036 at *3. As such, the TDCA claim will go forward.

### c. Claim for declaratory and injunctive relief

PHH also argues that Plaintiffs haven't sufficiently pleaded a claim for declaratory and injunctive relief under 28 USC §§ 2201 and 2202. Dkt 63 at 24–28. Plaintiffs argue that that they're simply seeking a judicial determination that the FHA servicing restrictions promulgated by HUD render Defendants' pay-to-pay fees not 'legally chargeable' to consumers with FHA-insured mortgages, as that term is used by the TDCA." Dkt 64 at 22.

Three factors must be considered when determining whether to decide or dismiss a declaratory-judgment action—whether the declaratory action is justiciable; whether the court has the authority to grant declaratory relief; and whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co v*

*Holmes County*, 343 F3d 383, 387 (5th Cir 2003), citing *Orix Credit Alliance, Inc v Wolfe*, 212 F3d 891, 895 (5th Cir 2000). The first factor on justiciability resolves the question here.

The Fifth Circuit has long held "that the HUD Handbook does not afford a private cause of action." *Law v Ocwen Loan Servicing, LLC*, 587 F Appx 790, 794 (5th Cir 2014, *per curiam*), citing *Roberts v Cameron-Brown Co*, 556 F2d 356, 360–61 (5th Cir 1977). Plaintiffs can't simply recast their claim to enforce guidelines in the HUD Handbook (for which there's no private right of action) as one for declaratory judgment and injunctive relief. See *Glanville v Dupar, Inc*, 727 F Supp 2d 596, 602 (SD Tex 2010) (similar holding as to claims under Federal Insurance Contributions Act and Federal Unemployment Tax Act). And because there's "no private cause of action, the claim for declaratory and injunctive relief fails as a matter of law." Ibid.

The claim for declaratory and injunctive relief will not go forward.

4. Potential for repleading

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit holds that this "'evinces a bias in favor of granting leave to amend.'" *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (citation omitted). But the decision whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012) (citation omitted). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

Because Plaintiffs' claim for declaratory and injunctive relief under 28 USC §§ 2201 and 2202 fails as a matter of law, amendment would be futile. Dismissal in that respect will be with prejudice.

5. Conclusion

The motion by Defendant PHH Mortgage Corporation to dismiss pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART.

It is GRANTED as to the claim for declaratory and injunctive relief under 28 USC §§ 2201 and 2202. That claim will be DISMISSED WITH PREJUDICE.

It is DENIED as to the claim under the Texas Debt Collection Act.

SO ORDERED.

Signed on August 11, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge