**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **MELBOURNE POFF and BARBARA POFF,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION NO.** |
| **v.** | ) ) | **4:20-cv-04018** |
| **PHH MORTGAGE CORPORATION,** | ) ) | |
| **Defendant.** | ) ) ) ) ) | |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

III.  SUMMARY OF THE PROPOSED SETTLEMENT ........................................ 4

    A.   Settlement Benefits ........................................................................................ 4

    B.   Notice. ............................................................................................................ 6

    C.   Plaintiffs' Counsel's Applications for (i) Attorneys' Fees and Litigation Expenses and (ii) Service Awards. ................................................................. 6

IV.   PROPOSED SCHEDULE OF EVENTS .......................................................... 7

V.    APPLICABLE LEGAL STANDARDS ............................................................ 8

VI.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL. ................................................................................................... 11

    A.   The Proposed Settlement Class Representatives and Their Counsel Have Adequately Represented the Class, and It Is Their Informed Opinion That the Proposed Settlement Is In the Best Interests of the Settlement Class. ........... 11

    B.   The Settlement Was the Result of Arm's Length Negotiations Between the Parties After Meaningful Discovery, Has No Obvious Deficiencies, Lacks Any Indicia of Fraud or Collusion, and Treats Settlement Class Members Equally. ......................................................................................................... 12

    C.   The Settlement Falls Within the Range of Possible Approval. .................... 15

    D.   The Proposed Notice Program Is Adequate. ................................................ 17

    E.   Conditional Certification of the Settlement Class is Appropriate. .............. 18

    1.   The Class Is Sufficiently Numerous. ........................................................... 19

    2.   There Are Common Issues of Law or Fact Common to the Settlement Class. .......... 20

    3.   The Claims of Plaintiffs Are Typical of the Claims of the Settlement Class. ........... 21

    4.   Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class ................................................................ 21

    5.   Common Questions of Law and Fact in this Action Predominate over any Individual Issues and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims. .................................................................. 22

        a.   Common Questions of Law and Fact Predominate. .......................... 22

        b.   A Class Action Is the Superior Method of Adjudicating This Case. ................. 23

VII.  PARALLEL PROCEEDINGS SHOULD BE ENJOINED. ............................. 23

VIII. CONCLUSION ................................................................................................ 24

i

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ......................................................................... 22, 23

*Amos v. PPG Industries, Inc.,*
  Case No. 2:05-cv-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ...................................... 15

*Berger v. Compaq Computer Corp.,*
  257 F.3d 475 (5th Cir. 2001) .................................................................. 11

*C.C. & L.C. v. Baylor Scott & White Health,*
  No. 4:18-CV-828-SDJ, 2022 WL 4477316 (E.D. Tex. Sept. 26, 2022) ...................................... 9

*cf. In re Waste Mgmt., Inc. Sec. Litig.,*
  No. H-99-2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002), *amended,* No. H-99-2183,
  2003 WL 27380802 (S.D. Tex. July 31, 2003) ...................................................... 23

*cf. Oceaneering Int'l, Inc. v. Cross Logistics, Inc.,*
  No. CIV.A. H-11-3447, 2014 WL 2462810 (S.D. Tex. June 2, 2014) ...................................... 16

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) .............................................................. 12, 16

*Del Carmen v. R.A. Rogers, Inc.,*
  No. SA16CA971FBHJB, 2018 WL 4701824 (W.D. Tex. Apr. 25, 2018), *report and
  recommendation adopted,* No. CVSA16CA971FBHJB, 2018 WL 4688774 (W.D. Tex. June
  13, 2018) ................................................................................. 10

*Duncan v. JPMorgan Chase Bank, N.A.,*
  No. SA-14-CA-00912-FB, 2015 WL 11623393 (W.D. Tex. Oct. 21, 2015) .......................... 12

*Hill v. Hill Bros. Constr. Co., Inc.,*
  No. 3:14-CV-213-SA-RP, 2018 WL 280537 (N.D. Miss. Jan. 3, 2018) ................................ 14

*Holden v. Burlington Northern, Inc.,*
  665 F. Supp. 1398 (D. Minn. 1987) ........................................................... 16

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ................................................................. 23

*In re Am. Online Spin-Off Accounts Litig.,*
  2005 WL 5747463 (C.D. Cal. May 9, 2005) ..................................................... 24

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................... 17

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   424 F. Supp. 3d 456 (E.D. La. 2020) ................................................................................... 16

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*,
   No. MDL 2328, 2015 WL 4875464 (E.D. La. Aug. 13, 2015) .............................................. 21

*In re Pool Prods. Market Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ........................................................................................... 10

*In re Waste Mgmt., Inc. Sec. Litig.*,
   2002 WL 35644013 .............................................................................................................. 23

*Izzio v. Century Golf Partners Mgmt., L.P.*,
   No. 3:14-CV-03194-M, 2019 WL 10589568 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x
   242 (5th Cir. 2019) .............................................................................................................. 14

*Jenkins v. Trustmark Nat. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ........................................................................................ 10

*Jones v. Singing River Health Sys.*,
   No. 14-447, 2016 WL 6106518 (S.D. Miss. Jan. 20, 2016) .................................................. 10

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................................... 9

*Lee v. Metrocare Servs.*,
   No. 3:13-CV-2349-O, 2015 WL 13729679 (N.D. Tex. July 1, 2015) ..................................... 12

*McCollum v. McAlister's Corp. of Mississippi*,
   No. CIV.A. 08-5050, 2012 WL 607664 (E.D. La. Feb. 10, 2012), *report and recommendation
   adopted*, No. CIV.A. 08-5050, 2012 WL 607972 (E.D. La. Feb. 24, 2012) ........................... 15

*McNamara v. Bre-X Mins. Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) .......................................................................................... 13

*McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*,
   No. 2:15-cv-01831-MHH (N.D. Ala. Aug. 1, 2019) .......................................................... 4, 20

*Mitchell v. State Farm Fire & Cas. Co.*,
   327 F.R.D. 552 (N.D. Miss. 2018) .................................................................................. 19, 21

iii

*Morris, et al. v. PHH Mortgage Corp., et al.*,
   No. 0:20-cv-60633-RS (S.D. Fla.) ............................................................................ 4

*Morrow v. Washington*,
   277 F.R.D. 172 (E.D. Tex. 2011) ........................................................................... 19

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir.1999) .................................................................................. 19

*Nelson v. Waring*,
   602 F. Supp. 410 (N.D. Miss. 1983) ..................................................................... 16

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................................. 15

*ODonnell v. Harris County*,
   No. 16-CV-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ............................. 9

*Owens v. Southern Hens, Inc.*,
   No. 07-28, 2009 WL 10722485 (S.D. Miss. July 27, 2009) .................................... 14

*Prause v. TechnipFMC plc*,
   No. 4:17-CV-02368, 2021 WL 6053219 (S.D. Tex. Mar. 23, 2021) ........................ 13

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .................................................................................. 9

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) .................................................................................. 22

*Roberts v. First Fin. Planners, Inc.*,
   No. 05-38-D-D, 2006 WL 8444265 (N.D. Miss. June 27, 2006) ............................. 10

*Shelby v. Two Jinns, Inc.*,
   2017 WL 6347370 (C.D. Cal. Feb. 8, 2017) ........................................................... 24

*Smith v. Tower Loan of Mississippi, Inc.*,
   216 F.R.D. 338 (S.D. Miss. 2003), *aff'd sub nom. Smith v. Crystian*, 91 F. App'x 952 (5th Cir.
   2004) ...................................................................................................................... 16

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) .................................................................................. 21

*State of W. Va. v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................... 17

*Torliatt v. Ocwen Loan Servicing, LLC*,
   570 F. Supp. 3d 781 (N.D. Cal. 2021) ........................................................... 20

*Valencia v. Greater Omaha Packing*,
   No. 8:08CV161, 2014 WL 284461 (D. Neb. Jan. 23, 2014) ..................................... 15

*Wal-mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................ 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................ passim

**Statutes**

28 U.S.C. § 1651 .......................................................................................... 24

**Other Authorities**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ........... 12

1 Newberg on Class Actions § 3.05 (3d ed. 1992) ...................................................... 20

## I.    <u>INTRODUCTION</u>

Plaintiffs Melbourne Poff and Barbara Poff ("Plaintiffs" or "Settlement Class Representatives"), on behalf of themselves and the putative Class Members, and Defendant PHH Mortgage Corporation ("PHH" or "Defendant"), individually and as successor by merger to Ocwen Loan Servicing, LLC ("Ocwen," and, together with PHH, "Defendants"), have reached a proposed settlement (the "Settlement") in this class action (the "Action") and now seek an Order from the Court:  (i) granting preliminary approval of the proposed Settlement; (ii) conditionally certifying the Settlement Class for settlement purposes only; (iii) appointing Plaintiffs as Settlement Class Representatives; (iv) appointing Plaintiffs' Counsel as Class Counsel for the Settlement Class; (v) directing that notice of the proposed Settlement be given to members of the Settlement Class in the proposed form and manner; and (vi) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved. As detailed herein and in the Settlement Agreement and Release (the "Settlement Agreement"),[1] which is being contemporaneously filed herewith, the Settlement provides significant and material benefits to the Settlement Class, including a cash settlement of $1,300,000.00, and was reached only after intensive litigation, meaningful discovery, and arm's length negotiations, including a full-day mediation session before United States Magistrate Judge Andrew M. Edison. Plaintiffs' Counsel believe the Settlement represents an excellent result for the Settlement Class.

Further, the proposed notice program is designed to provide individualized notice to all Settlement Class Members identified through a search of Defendant's records. Notice will be provided by postal mail. There is no claims process; instead, each Settlement Class Member who

---

[1] All capitalized terms not specifically defined herein shall have the same meaning as set forth in the Settlement Agreement.

does not opt out will automatically receive a payment. Thereafter, any unclaimed funds from uncashed checks will be disbursed to Homes for Our Troops as a *cy pres* award. Thus, no funds from the Settlement will revert to Defendant. Accordingly, Plaintiffs respectfully submit that the Court should preliminarily approve the terms and conditions of the Settlement, conditionally certify the Settlement Class, and provide for notice to the Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2020, Plaintiffs, individually and on behalf of a purported class, filed a lawsuit in the United States District Court for the District of New Jersey, asserting claims against Defendant for violations of the Texas Debt Collection Act ("TDCA") and for breach of contract. Plaintiffs' claims were based on the Defendant's practice of assessing Convenience Fees when its customers made their mortgage payments using online or telephonic payment methods. (Doc. 1).

On August 17, 2020, Defendant filed a motion to dismiss (Doc. 7), which was administratively terminated on August 18, 2020 (Doc. 8).

On September 4, 2020, Defendant filed a motion to stay class-related proceedings. (Doc. 15). Plaintiffs filed an opposition to Defendant's motion to stay on August 21, 2020. (Doc. 23). And, on November 2, 2020, the district court entered an order denying Defendant's motion to stay. (Doc. 32).

On November 12, 2020, the district court ordered the parties to file a joint letter stating their positions on a transfer of the case to federal court in Texas. (Doc. 36). In response, on November 23, 2020, the Parties filed a joint letter informing the district court that they had conferred and agreed to a transfer of the matter. (Doc. 37). Consequently, on November 24, 2020, the case was transferred to the United States District Court for the Southern District of Texas (the "Court"). (Doc. 38).

2

Following transfer of the action to this Court, Plaintiffs filed an Amended Complaint on January 11, 2021. (Doc. 60). The Amended Complaint retained the TDCA class claims, dropped the breach of contract claims, and added a claim for declaratory relief for an FHA sub-class, seeking a declaration that Convenience Fees are not legally chargeable to FHA borrowers and an injunction requiring PHH to comply with the TDCA. *See id*.

Defendant moved to dismiss the Amended Complaint on February 1, 2021. (Doc. 63). Plaintiffs filed an opposition on February 22, 2021 (Doc. 64), and Defendant filed a reply on March 15, 2021 (Doc. 67). In an order dated August 11, 2021, this Court granted in part and denied in part Defendant's motion to dismiss. (Doc. 72). Specifically, the Court dismissed Plaintiffs' declaratory relief claim while denying dismissal of the TDCA claim. *See id*. By separate order of that same date, the Court stayed this matter pending resolution of the Parties' dispute concerning the applicable statute of limitations. (Doc. 73).

Following expedited discovery on the statute of limitations issue, Defendant filed a motion for partial summary judgment, seeking dismissal of claims that sought to recover Convenience Fees paid more than two years before the filing of the initial complaint as time-barred under the two-year statute of limitations. (Doc. 74). Plaintiffs filed an opposition to Defendant's motion, arguing that because no statute of limitations expressly governs claims brought under the TDCA, a four-year statute of limitations should be applied. (Doc. 75).

In an order dated May 31, 2022, the Court found that it is appropriate to apply a two-year limitations period, and dismissed all TDCA claims based on payments made prior to July 17, 2018 (*i.e.*, two years before the filing of the initial complaint), which included all claims advanced by Ursula Williams, one of the three original named plaintiffs in this Action. (Doc. 77).

Following this ruling, the Parties agreed to mediate the claims remaining in dispute and

requested a settlement conference before United States Magistrate Judge Andrew M. Edison. (Doc. 79). The Parties participated in a mediation session before Magistrate Judge Edison on August 15, 2022. During that mediation session, the Parties reached a tentative agreement in principle on the principal terms of a potential settlement.

Following mediation, the Parties filed a Joint Notice of Settlement on September 13, 2022, informing the Court that the Parties had reached an agreement in principle and were working on memorializing the terms of said agreement. Doc. 82.

On October 31, 2022, the Parties fully executed the Settlement Agreement, which memorializes the terms and conditions of the proposed Settlement and embodies all relevant exhibits thereto. A copy of the Settlement Agreement is being contemporaneously filed herewith.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.  Settlement Benefits.

Under the proposed Settlement, Defendant shall establish a cash settlement fund of $1,300,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph 1.1.34 of the Settlement Agreement, the Settlement Class shall include:

> all borrowers on residential mortgage loans involving mortgaged property located in the State of Texas who, between July 17, 2018 (the first day of the Class Period) and October 17, 2022 (the last day of the Class Period), paid a Convenience Fee to Ocwen and/or PHH that was not refunded or returned. Excluded from the Settlement Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019); (b) all persons who are potential members of the proposed FDCPA settlement class in *Morris, et al. v. PHH Mortgage Corp., et al.*, No. 0:20-cv-60633-RS (S.D. Fla.), whether or not those persons timely and validly exclude themselves from the *Morris* FDCPA settlement class; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date this Agreement is fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and

4

magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

Thus, unless a Settlement Class Member submits a valid and timely request for exclusion, he or she is entitled to receive monetary benefits from the Settlement Fund on a *pro rata* basis, relative to the proportion of Retained Convenience Fees paid by the Settlement Class Member. *See* Settlement Agreement at ¶ 4.5. Payments made on Class Loans with multiple borrowers shall be treated as joint payments, such that each Class Loan will be entitled to only one Individual Allocation from the Settlement Fund. Co-debtors, joint-borrowers, and multiple obligors on a single Class Loan are not entitled to a separate Individual Allocation on the same Class Loan. *Id.*

Based on records obtained from Defendant, the sum of the Retained Convenience Fees paid by Settlement Class Members during the Class Period is $4,016,377. The Settlement Fund of $1,300,000 represents approximately 32.5% of that sum.

No funds from the Settlement will revert to Defendant. Unclaimed money from uncashed checks that remains in the Settlement Fund after 300 days after the Distribution Date will be disbursed to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives,"[2] as a *cy pres* award. *Id.* at ¶ 4.7.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims against the Released Persons relating to any Retained Convenience Fee paid by any Class Member during the period from July 17, 2018 through and including October 17, 2022. *See id.* at ¶¶ 1.1.27, 1.1.28, 3.1-3.8.

---

[2] https://www.hfotusa.org/mission/ (last visited October 28, 2022)

**B. Notice.**

As set forth in Section 7 of the Settlement Agreement, notice to Settlement Class Members shall be made by (i) mailing, by first-class US mail, the Class Notice (substantially in the form attached as Exhibit A to the Settlement Agreement) to those Settlement Class Members for whom an address is available in Defendant's records, and (ii) posting the Class Notice to the Settlement Website. Settlement Agreement ¶¶ 7.2.2, 7.2.8. The Settlement Website shall also contain the Settlement Agreement, the operative Complaint, the Preliminary Approval Order, and, when available, the Motions for (i) Attorneys' Fees, Litigation Expenses, and Service Awards and (ii) Final Approval of the Class Action Settlement. *See id.* at ¶ 7.2.8.

All costs and fees related to dissemination of the Notice and creation and maintenance of the Settlement Website will be considered administrative costs to be paid from the Settlement Fund.

The Class Notice includes the following information: (1) a plain and concise description of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Fairness Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Settlement Class Representatives' service awards. *See id.* at ¶ 7.2.3.

**C. Plaintiffs' Counsel's Applications for (i) Attorneys' Fees and Litigation Expenses and (ii) Service Awards.**

The Settlement Agreement provides that Class Counsel will file a motion with the Court requesting an award of attorneys' fees not to exceed thirty-three percent (33%) of the Gross Settlement Fund to compensate them for all of the work already performed in this case, all of the

6

work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel will also seek reimbursement of reasonable out-of-pocket litigation expenses. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees and costs. *See* Settlement Agreement at ¶ 7.2.3.1.

The Settlement Agreement further provides that Plaintiffs will request a service award for each Class Representative in an amount not to exceed $5,000 per Class Representative, or $10,000 in total. These awards will be paid out of the Settlement Fund and will compensate Plaintiffs for their efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members and achieving the benefits of this Agreement on behalf of the Settlement Class. *See* Settlement Agreement at ¶ 10.4.

## IV.    PROPOSED SCHEDULE OF EVENTS

Consistent with the provisions of the Settlement Agreement, Plaintiffs respectfully propose the following schedule for the various Settlement events:

1.    Deadline for disseminating Class Notice to Settlement Class Members:  no later than 28 days from entry of the Preliminary Approval Order (*see* Settlement Agreement at ¶ 7.2.2);

2.    Deadline for creating the Settlement Website and posting Class Notice:  by the date of the first mailing of the Class Notice (*see id*. at ¶ 7.2.8);

3.    Deadline for submission of the requests for exclusion from the Class or objections to the Settlement (the "Objection/Exclusion Deadline"):  received by the Settlement Administrator (for requests for exclusion) or filed with the Court (for objections)

no later than 35 days prior to the originally scheduled Final Fairness Hearing (*see id*. at ¶ 1.1.15);

4.    Deadline for filing motion for attorneys' fees, litigation expenses, and service awards:  14 days prior to the Objection/Exclusion Deadline (*see id.* at 10.1);

5.    Deadline for filing motion for final approval of the Settlement:  not later than ten (10) days before the Fairness Hearing (*see id.* at 11.1);

6.    Final Fairness Hearing: at the Court's convenience, but no earlier than one hundred and thirty-five (135) days after the date of entry of the Preliminary Approval Order (*id*. at ¶ 1.1.11).

## V.    <u>APPLICABLE LEGAL STANDARDS</u>

The approval process for a class action settlement takes place in three stages: preliminary approval, notice, and final approval. *See* Fed. R. Civ. P. 23 (e). More specifically, Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner" upon a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a Court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

8

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment;

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2)'s standards largely mirror factors adopted by both the Fifth Circuit and district courts in Texas, which include: (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members;[3] (6) the risk of fraud or collusion; and (7) the public interest. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *C.C. & L.C. v. Baylor Scott & White Health*, No. 4:18-CV-828-SDJ, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022) (stating "[b]ecause the Rule 23 and *Reed* factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" (quoting *ODonnell v. Harris County*, No. 16-CV-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)).

When considering these factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair. 'Particularly in class action suits, there is an overriding public interest in favor of settlement.'" *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (internal citations omitted); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss.

---

[3] This factor is not applicable at this stage of the proceedings, as the reaction of absent class members cannot be determined prior to dissemination of the Class Notice.

2014) ("settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving … lawsuits"); *Roberts v. First Fin. Planners, Inc.*, No. 05-38-D-D, 2006 WL 8444265, at *1 (N.D. Miss. June 27, 2006) (accord).

At the preliminary approval stage, the Court is not required to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will likely earn final approval." *See* Adv. Comm. Note at 27. As explained by one district court, this preliminary fairness evaluation "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Del Carmen v. R.A. Rogers, Inc.*, No. SA16CA971FBHJB, 2018 WL 4701824, at *6 (W.D. Tex. Apr. 25, 2018), *report and recommendation adopted*, No. CVSA16CA971FBHJB, 2018 WL 4688774 (W.D. Tex. June 13, 2018). Thus,

> [i]f the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.

*Id.*; *Jones v. Singing River Health Sys.*, No. 14-447, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016) (same); *In re Pool Prods. Market Antitrust Litig.*, 310 F.R.D. 300, 315 (E.D. La. 2015) (same, and further noting "[a]s this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval." (citations omitted)).

At this juncture, Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Settlement Class. Applying the venerable standards above, preliminary approval should be granted because the proposed Settlement and the

10

proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects.

## VI.    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL.

### A.    The Proposed Settlement Class Representatives and Their Counsel Have Adequately Represented the Class, and It Is Their Informed Opinion That the Proposed Settlement Is In the Best Interests of the Settlement Class.

The adequacy requirement requires inquiry into "the zeal and competence of the representative's counsel and … the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Here, Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class. Plaintiffs have adequately represented all Settlement Class Members in this action by achieving a Settlement that provides for meaningful and immediate benefits to Settlement Class Members. In addition, Plaintiffs have been actively involved throughout the course of the litigation and settlement, assisting Plaintiffs' Counsel in investigating claims on an individual basis, reviewing case filings, collecting documents for production, remaining apprised of the litigation, and overseeing settlement negotiations. Moreover, Plaintiffs' efforts, including the risks they voluntarily undertook as well as the time they expended supporting the litigation, were crucial to achieving the result for the Settlement Class. Thus, the proposed Settlement Class Representatives have adequately represented the Settlement Class.

Likewise, Plaintiffs' Counsel have fully and adequately represented all members of the Settlement Class. Plaintiffs' Counsel vigorously litigated this case including: (a) extensive pre-filing investigation; (b) drafting and filing the complaints; (c) opposing Defendant's motion to

11

dismiss, motion to stay, and motion for summary judgment; (d) preparing and propounding written discovery; (e) meeting-and-conferring with Defendant's counsel regarding various case management matters; (f) participating in an all-day mediation; (g) conducting confirmatory discovery to ensure identification of all Settlement Class Members and the total amount of aggregate Convenience Fees paid during the Class Period; and (h) ultimately successfully negotiating the Settlement now before the Court. Plaintiffs' Counsel's efforts demonstrate that they vigorously and zealously represented the Settlement Class.

Moreover, based on the foregoing, as well as Plaintiffs' Counsel experience in similar matters, including actions against Defendant in other jurisdictions, it is the informed opinion of both the Settlement Class Representatives and Plaintiffs' Counsel's that this Settlement represents an excellent result and is in the best interest of the Class. *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *7 (N.D. Tex. July 1, 2015) ("'When reviewing settlement agreements, courts are entitled to rely upon the judgment of experienced counsel for the parties ... [and] absent fraud, collusion, or the like, [a court] should be hesitant to substitute its own judgment for that of counsel.'" (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Accordingly, these factors weigh in favor of preliminary approval of the Settlement.

B. <u>The Settlement Was the Result of Arm's Length Negotiations Between the Parties After Meaningful Discovery, Has No Obvious Deficiencies, Lacks Any Indicia of Fraud or Collusion, and Treats Settlement Class Members Equally.</u>

Because the Settlement in this Action is the product of extensive arms' length negotiations, there is no reason to doubt its fairness. A proposed settlement that is the result of arm's length negotiations by class counsel is presumptively fair and reasonable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002); *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2015 WL 11623393, at *3 (W.D. Tex. Oct. 21, 2015)

("Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."). Here, the Settlement was reached only after extensive factual investigation, motions practice (including the filing of Defendant's motion to dismiss, motion to stay, and motion for summary judgment; and Plaintiffs' oppositions thereto), meaningful discovery, and a full-day mediation session before a highly respected mediator, United States Magistrate Judge Andrew M. Edison. Thus, Plaintiffs' Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Plaintiffs' Counsel were able to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

Equally important, counsel for the Defendant vigorously defended their client's position and demonstrated their commitment to litigate this Action vigorously. Hence, the proposed Settlement represents concessions by both parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.

Additionally, there are no obvious deficiencies in the Settlement Agreement. *See McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 432 (E.D. Tex. 2002). Settlement Class Members who do not exclude themselves will automatically receive their *pro rata* share of the Settlement Fund, less any court-approved attorneys' fees and litigation expenses, service awards, and costs of settlement notice and administration. The anticipated requests for attorneys' fees, litigation expenses and service awards are reasonable and in line with prevailing standards in the Fifth Circuit and district courts in Texas. *See Prause v. TechnipFMC plc*, No. 4:17-CV-02368, 2021 WL 6053219, at *1 (S.D. Tex. Mar. 23, 2021) (awarding attorneys' fees equal to 33% of the Settlement Fund, plus payment of litigation expenses in the amount of $782,805.21 and a service

13

award of $15,000); *Hill v. Hill Bros. Constr. Co., Inc.*, No. 3:14-CV-213-SA-RP, 2018 WL 280537, at *3 (N.D. Miss. Jan. 3, 2018) (awarding counsel attorneys' fees of 33% of the common fund, and stating "district courts within the Fifth Circuit typically award class counsel one-third of the common fund as an attorney fee."); *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-CV-03194-M, 2019 WL 10589568, at *12 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019) (awarding service awards of $10,000, $5,000, and $3,000).

Moreover, it was only after agreeing on the principal terms of the potential Settlement that the Parties discussed potential Service Awards to the Settlement Class Representatives and attorneys' fees for Plaintiffs' Counsel. The only agreement made regarding those items was that Plaintiffs' Counsel would seek (i) an award of attorneys' fees from the Court of no more than thirty three percent (33%) of the Settlement Fund plus expenses, to be paid solely out of the Settlement Fund, and (ii) a Service Award of $10,000 collectively to the Plaintiffs to compensate them for their efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members and achieving the benefits of the Settlement. Defendant remains free to object to any request for attorneys' fees, litigation expenses, and Service Awards if and as it deems fit. *See* Settlement Agreement, Section 10. Thus, there is no sign of fraud or collusion. *See Owens v. Southern Hens, Inc*., No. 07-28, 2009 WL 10722485, at *3 (S.D. Miss. July 27, 2009) (holding that a court "may presume that no fraud or collusion has occurred between counsel in the absence of any evidence to the contrary.").

Furthermore, the Settlement provides for any remaining funds in the Net Settlement Fund to be disbursed to Homes for Our Troops as a *cy pres* award. Thus, there is no issue of reverter. *See id*. at ¶ 4.7.

14

Lastly, there is no unfair or preferential treatment of any Settlement Class Member. Payments to Settlement Class Members will be made on a *pro rata* basis, relative to the total dollar amount of Convenience Fees paid by the Settlement Class Member and retained by Defendants as compared to the total dollar amount of all Convenience Fees paid by all Settlement Class Members and retained by Defendants. Co-borrowers on a single class account shall be entitled to a single payment per Class Loan. Thus, each Settlement Class Member is given fair and equal treatment. *See McCollum v. McAlister's Corp. of Mississippi*, No. CIV.A. 08-5050, 2012 WL 607664, at *2 (E.D. La. Feb. 10, 2012), *report and recommendation adopted*, No. CIV.A. 08-5050, 2012 WL 607972 (E.D. La. Feb. 24, 2012) (finding a pro rata distribution to the class was fair and equitable); *Valencia v. Greater Omaha Packing*, No. 8:08CV161, 2014 WL 284461, at *3 (D. Neb. Jan. 23, 2014) (same).

In sum, the Settlement was achieved through arm's-length negotiations conducted by informed counsel with the assistance of a neutral third-party mediator, contains no obvious deficiencies, lacks any evidence of fraud or collusion, and treats Settlement Class Members equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

C.   The Settlement Falls Within the Range of Possible Approval.

The value of the proposed Settlement falls well within the range of a reasonable settlement. "[T]he determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum." *Amos v. PPG Industries, Inc*., Case No. 2:05-cv-70, 2015 WL 4881459, at *3 (S.D. Ohio Aug. 13, 2015); *see also Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion"); *cf*.

15

*Oceaneering Int'l, Inc. v. Cross Logistics, Inc.*, No. CIV.A. H-11-3447, 2014 WL 2462810, at \*28 (S.D. Tex. June 2, 2014) (noting that "it may be 'impossible to fix a reasonable settlement amount with anything approaching mathematical precision,'"). As such, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 369 (S.D. Miss. 2003), *aff'd sub nom. Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004).

Here, the proposed Settlement provides a non-reversionary, common fund of $1,300,000, which Plaintiffs' Counsel believe is an excellent result for the Settlement Class Members in light of Plaintiffs' claims and Defendant's defenses. When considering the possible range of recovery, given a plaintiffs' likelihood of success on the merits, a court must remain aware that "[c]ompromise is the essence of settlement" and "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 489 (E.D. La. 2020) (quoting *Nelson v. Waring*, 602 F. Supp. 410, 413 (N.D. Miss. 1983) and *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, when the maximum value of Plaintiffs' and the Class's claims are discounted by the identifiable risks, including Defendant's defenses, experience dictates that the interests of the Class are better served by the proposed Settlement. More particularly, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of further litigation. *See Holden*, 665 F. Supp. at 1413-14 (noting that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case).

In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against the Defendant is uncertain. As set forth above, Defendant has vigorously denied

16

Plaintiffs' allegations of wrongdoing and has already prevailed on a partial motion for summary judgment, which resulted in the dismissal of all TDCA claims based on payments made prior to July 17, 2018 (*i.e.*, two years before the filing of the initial complaint) and included all claims advanced by Ursula Williams, one of the three original named plaintiffs in this Action. (Doc. 77). Plaintiffs anticipate that Defendant would have vigorously opposed class certification and would have likely filed another motion for summary judgment if this Action were to continue. Thus, continued litigation of the Action would have been lengthy and expensive, and the possibility of Plaintiffs prevailing on a class basis through judgment is uncertain.

Moreover, even if Plaintiffs were to prevail through continued litigation, they still face significant risks as an appeal by Defendant would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

In sum, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of further litigation. In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against the Defendant is uncertain. Accordingly, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

D.  <u>The Proposed Notice Program Is Adequate.</u>

17

The proposed Preliminary Approval Order will require the parties to notify Settlement Class Members of the Settlement by (i) mailing the Class Notice to those Settlement Class Members for whom an address is available in Defendant's records and was made available as part of the Settlement Class Roster, and (ii) posting the Class Notice to the Settlement Website. The Settlement Administrator is also required to update the last known borrower mailing addresses for each Class Loan as reflected in PHH's records through the National Change of Address system or similar databases and engaging in reasonable efforts to update addresses for undeliverable notices.

In addition, the Settlement Website shall also contain the Settlement Agreement, the signed Preliminary Approval Order, the operative Complaint, and when they become available, the Motions for (i) Attorneys' Fees, Litigation Expenses, and Service Awards and (ii) Final Approval of the Class Action Settlement.

The Class Notice includes the following information:  (1) a plain and concise description of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Fairness Hearing, and (4) information regarding Plaintiffs' Counsel's anticipated fee application and the anticipated request for the Class Representatives' service awards. Thus, the Notice program provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23(e)(1) and due process.

E.  <u>Conditional Certification of the Settlement Class is Appropriate.</u>

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites.   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part, that a class action may be maintained if:

> (b)(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

As set forth below, all of the requirements of Rule 23(a) and (b)(3) are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes only.

1.   The Class Is Sufficiently Numerous.

When considering Rule 23(a)'s numerosity requirement, a "plaintiff need not establish the exact number of potential class members" as "[n]o definite standard exists as to the size of class that satisfies the numerosity requirement." *Morrow v. Washington*, 277 F.R.D. 172, 190 (E.D. Tex. 2011). Thus, courts require only a "reasonable estimate" to establish numerosity. *Mitchell v. State Farm Fire & Cas. Co*., 327 F.R.D. 552, 561 (N.D. Miss. 2018). In *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir.1999), the Fifth Circuit held that a class consisting of between

100 to 150 members is "within the range that generally satisfies the numerosity requirement." *Id.* at 624 (citing 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed. 1992) (stating that any class consisting of more than forty members "should raise a presumption that joinder is impracticable")).

Here, Plaintiffs have determined, based on Defendant's review of its internal records, that the Settlement Class contains 47,793 unique Class Loans. Moreover, the Settlement Class Members are geographically dispersed making joinder impracticable. As such, the Settlement Class clearly satisfies the numerosity requirement.

       2.  <u>There Are Common Issues of Law or Fact Common to the Settlement Class.</u>

To certify the Settlement Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation." *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted). "[T]he commonality requirement is not usually a contentious one … and is easily met in most cases." NEWBERG §13:18. Indeed, "even a single common question will do." *Dukes*, 131 S. Ct. at 2551 (citation omitted).

In this case, the key issues stem from the Defendant's alleged common course of conduct: (1) whether Defendant's collection of Convenience Fees violated the TDCA; and (2) whether Plaintiffs and the purported Class are entitled to actual damages, and, if so, in what amount. These same issues, or ones substantially similar, have been identified by federal courts as common questions well suited to class wide resolution. *See Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781, 794 (N.D. Cal. 2021) (finding commonality satisfied); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 13211634, at *2 (N.D. Ala. Feb. 6, 2019) (finding "for purposes of settlement, Rule 23(a)'s commonality requirement is satisfied."). Consequently, commonality is satisfied.

20

3.    <u>The Claims of Plaintiffs Are Typical of the Claims of the Settlement Class.</u>

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like the test for commonality, "the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mitchell*, 327 F.R.D. at 561 (internal citation omitted).

Here, the claims all involve Defendant's conduct toward the Settlement Class members, and Plaintiffs' and the Class's claims are based on the same legal theories. Through these claims, Plaintiffs seek monetary relief for themselves and all putative Class Members. Accordingly, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and they are appropriate Settlement Class Representatives. *See In re Pool Prod. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4875464, at *8 (E.D. La. Aug. 13, 2015).

4.    <u>Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class.</u>

Adequacy under Rule 23(a)(4) is satisfied where a proposed class representative: (1) does not have conflicts with other members of the class, and (2) has retained qualified counsel. *Mitchell*, 327 F.R.D. at 562. Here, Plaintiffs' interests are perfectly aligned with the proposed Settlement Class, as they seek to cease Defendant's practice of Convenience Fees, which Plaintiffs deem unlawful, and to maximize the largest possible monetary recovery from the Defendant. Thus, Plaintiffs believe their claims coincide identically with the claims of the Settlement Class. Additionally, because of this, Plaintiffs have vigorously prosecuted this case for the benefit of all

21

members of the Settlement Class. Further, there is no conflict or any antagonism between Plaintiffs and the Settlement Class.  Consequently, Plaintiffs have satisfied the adequacy requirement.

Moreover, Plaintiffs have retained counsel with significant expertise in complex civil litigation. More specifically, the law firms of Carney Bates & Pulliam, PLLC ("CBP") and Bailey & Glasser LLP are nationally recognized law firms within the field of complex class action litigation, also having experience in federal and state consumer protection context and litigation involving Convenience Fees. Both firms are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. Thus, Plaintiffs' Counsel are unquestionably qualified to undertake this litigation.

5. <u>Common Questions of Law and Fact in this Action Predominate over any Individual Issues and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims.</u>

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Prods. v. Windsor,* 521 U.S. 591, 591-94 (1997). These requirements are satisfied in this case.

*a.   Common Questions of Law and Fact Predominate.*

In analyzing the predominance factor, the United States Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622 (1997). This is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof." *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015). In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial.  *In re Am. Int'l Grp.,*

22

*Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *cf. In re Waste Mgmt., Inc. Sec. Litig.*, No. H-99-2183, 2002 WL 35644013, at *17 (S.D. Tex. May 10, 2002), *amended,* No. H-99-2183, 2003 WL 27380802 (S.D. Tex. July 31, 2003) (finding "where a settlement class is presented, the trial court need not consider the manageability of the class at trial.").

Common questions represent a significant aspect of this case. Critical case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant's collection of Convenience Fees violated the TDCA. These issues, which arise from Defendant's common course of conduct, predominate over any individual issues and make certification of the Settlement Class appropriate.

*b.   A Class Action Is the Superior Method of Adjudicating This Case.*

The second prong of Rule 23(b) is satisfied by the proposed Settlement. As explained in *Amchem* and *In re Am. Int'l Grp., Inc. Sec. Litig,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *17. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally certify the proposed Settlement Class for purposes of settlement and order notice to issue.

## VII.   PARALLEL PROCEEDINGS SHOULD BE ENJOINED.

Finally, the Court should preliminarily enjoin all Settlement Class Members who do not execute and timely file a Request for Exclusion from the Settlement Class from filing, prosecuting, maintaining, participating in or continuing litigation in federal or state court based on or related to

23

the claims or facts alleged in this Action. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act.

The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Am. Online Spin-Off Accounts Litig.*, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005). Settlement Class Members who do not opt out should be enjoined from asserting claims on behalf of other Settlement Class Members pending the Court's determination whether to finally approve the Settlement, and from asserting individual claims unless they opt out. Accordingly, pursuant to its authority under the All-Writs Act, the Court should enjoin parallel proceedings by or on behalf of Settlement Class Members pending the settlement approval process. *See, e.g., Shelby v. Two Jinns, Inc.*, 2017 WL 6347370, at *5 (C.D. Cal. Feb. 8, 2017) (entering an injunction against asserting released claims pending settlement approval and concluding that it is "necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. §1651(a)").

## VIII.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order attached to the Settlement Agreement as Exhibit C: (i) granting preliminary approval of the proposed Settlement; (ii) conditionally certifying the Settlement Class for settlement purposes only; (iii) appointing Plaintiffs as Settlement Class Representatives; (iv) appointing Plaintiffs' Counsel as Class Counsel

24

for the Settlement Class; (v) directing that notice of the proposed Settlement be given to members of the Settlement Class in the proposed form and manner; (vi) preliminarily enjoining Potential Settlement Class Members from directly or indirectly filing, commencing, participating in, or prosecuting any lawsuit in any jurisdiction asserting any claims that would be Released Claims if this Settlement is finally approved, unless and until they timely exclude themselves from the Settlement Class; and (vii) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved.

Dated:  November 4, 2022                     Respectfully submitted,

/s/ Randall K. Pulliam
Randall K. Pulliam
Texas Bar No. 24048058
S.D. Tex. Bar No. AK930527
rpulliam@cpblaw.com
Lee Lowther (admitted *pro hac vice*)
llowther@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

James L. Kauffman (admitted *pro hac vice*)
jkauffman@baileyglasser.com
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Elizabeth Ryan (admitted *pro hac vice*)
eryan@baileyglasser.com
**BAILEY & GLASSER, LLP**
99 High Street, Ste. 304
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

25

## CERTIFICATE OF SERVICE

I certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on November 4, 2022.

*/s/ Randall K. Pulliam*
Randall K. Pulliam