## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| **MELBOURNE POFF, and BARBARA POFF, on behalf of themselves and all others similarly situated,**<br><br>　　　　**Plaintiffs,**<br><br>**v.**<br><br>**PHH MORTGAGE CORPORATION, itself and as successor by merger to OCWEN LOAN SERVICING, LLC,**<br><br>　　　　**Defendant.** | **Case No. 4:20-cv-04018** |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ........................................................................................ 1

II.   OVERVIEW OF THE LITIGATION ........................................................ 3

    A.    Summary of Plaintiffs' Claims ....................................................... 3

    B.    Procedural Posture ......................................................................... 4

    C.    The Settlement Negotiations and the Proposed Settlement ........................... 6

III.  APPLICABLE LEGAL STANDARDS ...................................................... 7

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE,
      WARRANTING FINAL APPROVAL ................................................... 10

    A.    The Settlement Class Representatives and Class Counsel Have
         Provided Excellent Representation to the Settlement Class, Negotiating
         at Arm's Length with No Indicia of Collusion ........................................... 10

    B.    The Settlement Provides Significant Relief for the Settlement Class ........ 12

        1.    Continued litigation would be risky, complex, lengthy, and
             expense ............................................................................... 13

        2.    The Settlement Provides Meaningful, Automatic Payments to
             Settlement Class Members, With Less than 1% of Settlement
             Class Members Requesting to be Excluded from the Settlement .... 14

        3.    The Requested Attorneys' Fees and Costs Are Reasonable and
             In Line with Similar Awards Approved in the Fifth Circuit ............ 16

        4.    The Settlement Provides for a Non-Reversionary Common Fund .. 16

    C.    The Settlement Treats All Settlement Class Members Equitably, and
         There Is No Agreement Required to Be Identified under Rule 23(e)(3) .... 16

    D.    The Factual Record Was Well-Developed Through Discovery and the
         Litigation Was Sufficiently Advanced ......................................... 17

    E.    The Notice Program Satisfies Rule 23 and Due Process, and
         Constitutes the Best Notice Practicable ...................................... 18

    F.    The Opinions of Class Counsel and the Settlement Class
         Representatives ............................................................................ 18

V.    THE SOLE OBJECTION FILED IN THIS ACTION DOES NOT ADDRESS
      THE SETTLEMENT AND SHOULD BE OVERRULED ................................... 19

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
      APPROPRIATE ..................................................................... 20

VII.    CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................ 8, 9

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................... 14

*Churchill Village, L.L.C. v. General Elec.*,
  361 F.2d 566 (9th Cir. 2004) .................................................................. 13

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) .................................................................. 7

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................ 8, 18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ................................ 15

*Erica P. John Fund v. Halliburton Co.*,
  No. 002-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................... 10

*Hale v. State Farm Mut. Automobile Ins. Co.*,
  No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................ 16

*Hays v. Eaton Grp. Attorneys, LLC*,
  No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ............................ 10

*In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 7, 9, 12

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................ 14

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex 2010) ............................................................... *passim*

*Lee v. Metrocare Servs.*,
  No. 3:13-CV-2349, 2015 WL 13729679 (N.D. Tex. July 1, 2015)............................ 13

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ........................................................................ 19

*ODonnell v. Harris Cty., Texas*,
   No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019)
   ........................................................................................................ 9, 10, 12, 18

*Quintanilla v. A & R Demolition Inc.*,
   CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008)............................ 19

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................................... 8, 9, 10, 13

*State of West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970)................................................................. 14

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ...................................................................... 10

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................... 19

*Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ........................................................................ 9

*United States v. City of Miami, Fla.*,
   614 F.2d 1322 (5th Cir. 1980) ...................................................................... 7

**Statutes**

Tex. Fin. Code § 392.001, *et seq.* ............................................................ 3, 4, 5

Tex. Fin Code § 392.303(a)(2) ....................................................................... 3

**Rules**

Fed. R. Civ. P. 23.............................................................................. *passim*

Fed. R. Civ. P. 23(a) ................................................................................. 20

Fed. R. Civ. P. 23(a)(3) ............................................................................. 20

Fed. R. Civ. P. 23(b)(3) ............................................................................. 20

Fed. R. Civ. P. 23(c) ................................................................................... 3

iv

Fed. R. Civ. P. 23(e) ................................................................................ 7, 10, 20

Fed. R. Civ. P. 23(e)(2) ................................................................................. 8, 9, 12

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 12

Fed. R. Civ. P. 23(e)(3) ............................................................................ 8, 12, 16, 17

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), the Stipulation of Settlement and Release (the "Settlement Agreement") (Doc. 87-3), and this Court's Order Granting Motion for Preliminary Approval of Class Action Settlement, Conditionally Certifying a Class for Settlement Purposes, Directing the Issuance of Class Notice, and Scheduling a Final Approval Hearing (the "Preliminary Approval Order") (Doc. 90), Plaintiffs Melbourne Poff and Barbara Poff ("Plaintiffs" or "Settlement Class Representatives") respectfully request that this Court grant final approval of the settlement (the "Settlement") reached between Plaintiffs and Defendant PHH Mortgage Corporation ("PHH" or "Defendant") (collectively with Plaintiffs, the "Parties").

The Settlement in this action (the "Action") will provide significant benefits for Settlement Class Members. The Settlement provides for a common fund of $1,300,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members, with no reverter to Defendant. The  Settlement Fund represents 32.5% of the total amount of Convenience Fees that Plaintiffs allege were improperly collected by Defendant (roughly $4 million). No claim forms are required – each Settlement Class Member who does not opt out will automatically receive a check. Thereafter, any residual funds will be disbursed to a *cy pres* recipient, Homes for Our Troops, a 501(c)(3) charity.

Plaintiffs and Class Counsel believe that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard for final approval as discussed herein. Plaintiffs and Class Counsel have adequately represented the Class. *See* Doc. 87 at ¶ 15; Doc. 94 at ¶¶ 9–25. This Settlement is the product of arm's-length negotiations by

experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after intensive litigation, discovery, and negotiations, including a full-day mediation session with a respected neutral mediator. Doc. 87 at ¶¶ 15-23.

The Court-approved notice program has been fully implemented. The Court-appointed Settlement Administrator sent the approved Notice to all 47,404 Class Members. RG/2 Declaration ("RG/2 Decl.") at 6. After remailing the Notice to any non-delivered recipients, the mailings have reached over 99.9% of Class Members. *Id*. The 99.9% delivery success rate is at the high-end of the range endorsed by the Federal Judicial Center. *See* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range).

The response by Settlement Class Members has been overwhelmingly positive, further reinforcing the position that final approval of the Settlement is warranted. To date, there have been only six opt-outs and one objection. The sole objection did not raise any issues with  the Settlement or its terms; it instead addresses other complaints the filer has about the Defendant's practices. It is addressed below in Section V.

The Settlement yields significant and valuable benefits for the Settlement Class, especially when considering the costs, risks, and delay of continued litigation, trial, and possible appeals. Throughout this litigation Defendant has denied any wrongdoing and defended its legal position vigorously. This Settlement will provide Settlement Class Members with compensation now and avoid the risk and uncertainty of further litigation, as well as a possible trial or appeal.

Accordingly, Plaintiffs respectfully submit that the Settlement satisfies all criteria for final approval, and specifically request this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification of the Settlement Class for settlement purposes; (iii) find that the notice program as set forth in Section II(7) of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Rule 23(c) and due process and constitutes the best notice practicable under the circumstances; (iv) grant Plaintiffs' previously filed motion for attorneys' fees, costs, and Settlement Class Representatives' Service Awards (Doc. 94); and (v) enter final judgment.

## II.    OVERVIEW OF THE LITIGATION

### A.    Summary of Plaintiffs' Claims

The operative complaint (the "Amended Class Action Complaint" or "Complaint") in this Action alleges, on behalf of Plaintiffs and all others similarly situated, that PHH violates the Texas Debt Collection Act ("TDCA") and federal regulations regarding mortgages insured by the Federal Housing Administration ("FHA") by assessing fees to borrowers that are either not permitted by law or are expressly prohibited by their mortgage agreements. Doc. 87. Specifically, Plaintiffs allege that PHH employed the unfair and unconscionable practice of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation" that was not "expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" Tex. Fin Code § 392.303(a)(2). Further, Plaintiffs initially alleged that the fees breach Plaintiffs' and Class Members' mortgage agreements.

3

**B.    Procedural Posture**

On July 17, 2020, following an investigation, Plaintiffs, individually and on behalf of a purported class, filed a lawsuit in the United States District Court for the District of New Jersey, asserting claims against Defendant for violations of the TDCA and for breach of contract. Plaintiffs' claims were based on the Defendant's practice of assessing Convenience Fees when its customers made their mortgage payments using online or telephonic payment methods. Doc. 1.

On August 17, 2020, Defendant filed a motion to dismiss (Doc. 7), which was administratively terminated on August 18, 2020. Doc. 8.

On September 4, 2020, Defendant filed a motion to stay class-related proceedings. Doc. 15. Plaintiffs filed an opposition to Defendant's motion to stay on September 21, 2020. Doc. 23. And, on November 2, 2020, the district court entered an order denying Defendant's motion to stay. Doc. 32.

On November 12, 2020, the district court ordered the Parties to file a joint letter stating their positions on a transfer of the case to federal court in Texas. Doc. 36. In response, on November 23, 2020, the Parties filed a joint letter informing the district court that they had conferred and agreed to a transfer of the matter. Doc. 37. Consequently, on November 24, 2020, the case was transferred to the United States District Court for the Southern District of Texas (the "Court"). Doc. 38.

Following transfer of the action to this Court, Plaintiffs filed an Amended Complaint on January 11, 2021. Doc. 60. The Amended Complaint retained the TDCA class claims, dropped the breach of contract claims, and added a claim for declaratory relief for an FHA

sub-class, seeking a declaration that Convenience Fees are not legally chargeable to FHA borrowers and an injunction requiring PHH to comply with the TDCA. *See id.*

Defendant moved to dismiss the Amended Complaint on February 1, 2021. Doc. 63. Plaintiffs filed an opposition on February 22, 2021 (Doc. 64), and Defendant filed a reply on March 15, 2021. Doc. 67. In an order dated August 11, 2021, this Court granted in part and denied in part Defendant's motion to dismiss. Doc. 72. Specifically, the Court dismissed Plaintiffs' declaratory relief claim while denying dismissal of the TDCA claim. *See id.* By separate order of that same date, the Court stayed this matter pending resolution of the Parties' dispute concerning the applicable statute of limitations. Doc. 73.

Following expedited discovery on the statute of limitations issue, Defendant filed a motion for partial summary judgment, seeking dismissal of claims that sought to recover Convenience Fees paid more than two years before the filing of the initial complaint as time-barred under the two-year statute of limitations. Doc. 74. Plaintiffs filed an opposition to Defendant's motion, arguing that because no statute of limitations expressly governs claims brought under the TDCA, a four-year statute of limitations should be applied. Doc. 75.

In an order dated May 31, 2022, the Court found that it is appropriate to apply a two-year limitations period, and dismissed all TDCA claims based on payments made prior to July 17, 2018 (*i.e.*, two years before the filing of the initial complaint), which included all claims advanced by Ursula Williams, one of the three original named plaintiffs in this Action. Doc. 77.

### C.     The Settlement Negotiations and the Proposed Settlement

Following the May 31, 2022 order, the Parties agreed to mediate the claims remaining in dispute and requested a settlement conference before United States Magistrate Judge Andrew M. Edison. Doc. 79. The Parties participated in a mediation session before Judge Edison on August 15, 2022. During that mediation session, the Parties reached a tentative agreement in principle on the principal terms of a potential settlement.

Following mediation, the Parties filed a Joint Notice of Settlement on September 13, 2022, informing the Court that the Parties had reached an agreement in principle and were working on memorializing the terms of said agreement. Doc. 82.

On October 31, 2022, the Parties fully executed the Settlement Agreement, which memorialized the terms and conditions of the proposed Settlement and embodies all relevant exhibits thereto. A copy of the Settlement Agreement is attached as Exhibit C to the Joint Declaration of Randall K. Pulliam and James L. Kauffman. Doc. 87.

The proposed Settlement requires Defendant to establish a cash settlement fund of $1,300,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. Doc. 86. Subject to Court approval, the Settlement Fund will be used to make payments to Settlement Class Members; pay the costs of Class Notice and Settlement Administration; pay Service Awards in the amount of $5,000 to each named Plaintiff; and pay Class Counsel's attorneys' fees, and litigation costs. Doc. 87, Exhibit C, ¶ 4.1 – 4.4. Payments will be made to Settlement Class Members without the need for any claim forms. No money will revert to PHH. *Id.,* at II(4.7).

In the event that a Settlement Class Member's payment ("Individual Allocation")

remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members, the remaining funds will be paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured – post 9/11 Veterans, to enable them to rebuild their lives." https://www.hfotusa.org/mission/ (last visited July 18, 2023).

On November 4, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support. Doc. 86. This Court granted the Unopposed Motion for Preliminary Approval of the Settlement on April 18, 2023. Doc. 90.

## III.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. *See* Fed. R. Civ. P. 23(e). A class action should be approved if the court finds it "fair, reasonable, and adequate." *Id*. at 23(e)(2). The Fifth Circuit has recognized a strong public policy in favor of settlement of class action lawsuits. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in favor of settlement" in class action cases); *United States v. City of Miami, Fla.*, 614 F.2d 1322, 1332 (5th Cir. 1980); *see also In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (finding a strong presumption in favor of fairness when a class settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *Klein v.*

*O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex 2010) ("strong presumption" in favor of settlement); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007).

Rule 23(e)(2), as amended effective December 1, 2018, provides that, in determining whether a settlement is "fair, reasonable, and adequate," the court should consider whether:

(A)　the class representatives and counsel have adequately represented the class;

(B)　the proposal was negotiated at arm's length;

(C)　the relief provided for the class is adequate, taking into account:

　　(i)　the costs, risks, and delay of trial and appeal;

　　(ii)　the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

　　(iii)　the terms of any proposed award of attorney's fees, including timing of payment;[13] and

　　(iv)　any agreement required to be identified under Rule 23(e)(3); and

(D)　the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

Along with the Rule 23(e)(2) factors, courts in this Circuit also consider the following six factors (the "*Reed* factors") in analyzing the propriety of a class action settlement:

(1) the existence of fraud or collusion behind the settlement; (2) the

---

[1] Plaintiffs addressed the reasonableness of their requested attorneys' fees and expenses in their fee application and supporting memorandum of law filed on July 26, 2023. Doc. 94. The fee application was posted on the settlement website on July 27, 2023.

complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible discovery; and (6) the opinions of class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (same).

"Because the Rule 23 and case-law factors overlap, courts in this district often combine them in analyzing class settlements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care*, 2019 WL 387409, at *3; *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

In short, the determination of whether to grant final approval to a proposed settlement involves a balance. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063; *see also Klein*, 705 F. Supp. 2d at 650 (when considering approval, a court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial") (internal quotation marks omitted).

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Erica P. John Fund v. Halliburton Co.*, No. 002-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063). "This presumption reflects the strong public interest in settling class actions." *ODonnell*, 2019 WL 4224040, at *8 (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.")); *Hays*, 2019 WL 427331, at *8 ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable[,] and adequate.") (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012)).

The Settlement in this Action is fair, reasonable, and adequate under the factors identified in Rule 23(e) and the Fifth Circuit's *Reed* opinion, warranting final approval.

### A.  The Settlement Class Representatives and Class Counsel Have Provided Excellent Representation to the Settlement Class, Negotiating at Arm's Length with No Indicia of Collusion

The Fifth Circuit has held the adequacy inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and … [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of the absentees[.]" *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th

Cir. 2002) (citing *Berger v. Compaq Computer Corp.*, 257 F.2d 475, 479 (5th Cir. 2001), and *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

Here, the Settlement Class Representatives have adequately represented the Class in this case. They have each been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Doc. 94-1 at 24. Further, each Settlement Class Representative has no conflict with the Settlement Class, asserts no claim for individual relief, and was prepared to testify at trial. The Settlement Class Representatives' efforts, including the risks they voluntarily took as well as the time they expended advancing the litigation, were crucial to achieving the excellent result for the Settlement Class. *See* Doc. 94 at 34.

Class Counsel have fully and adequately represented all members of the Settlement Class. They are well-qualified and experienced as described in detail in Class Counsel's declarations filed in support of Plaintiffs' motion for an award of attorneys' fees. *See* Doc. 94-1 and 94-2. In brief, Class Counsel vigorously litigated this case by performing such tasks as: (a) extensive pre-filing investigation; (b) researching the law applicable to Plaintiffs' claims and Defendant's defenses; (c) researching, drafting and filing the complaints; (d) reviewing documents; (e) opposing Defendant's motions to dismiss; (f) drafting discovery; (g) drafting Plaintiffs' mediation statement; (h) participating in a full-day mediation followed by post-mediation negotiations; and (i) successfully negotiating the Settlement. *See id.* Class Counsel's efforts demonstrate that they vigorously and

zealously represented the Class. It is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class.

In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, hard fought, and at times contentious, conducted with the assistance of a neutral mediator. *See* Doc. 87. As noted above, there is typically a presumption of fairness that a settlement is fair and reasonable when it is the result of arm's length negotiations between experienced counsel. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063 (citations omitted). The arm's length nature of the negotiations and the vigorous litigation of the Action also establish a lack of collusion. *ODonnell*, 2019 WL 4224040, at *9-10. As the court observed in *ODonnell*, there is no suggestion of fraud or collusion in a case, like this one, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id*. Thus, the court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id*. (citing *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 7283639, at *12 (W.D. Tex. Aug. 20, 2018)).

## B. The Settlement Provides Significant Relief for the Settlement Class

When determining if the relief provided for the class is adequate, Rule 23 instructs this Court to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Consideration of the Rule 23(e)(2)

factors as informed by the *Reed* factors weighs in favor of final approval. *See Reed*, 703 F.2d 170 (listing the "range of possible recovery" as the fifth factor).

### 1. Continued litigation would be risky, complex, lengthy, and expensive

While Plaintiffs have calculated the maximum value of their claims to be greater than the settlement amount, the maximum value of Plaintiffs' and the Class's claims must be discounted by the identifiable risks. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."); *see also Lee v. Metrocare Servs.*, No. 3:13-CV-2349, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) ("Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, the risks of continued litigation are substantial. Defendant has vigorously denied Plaintiffs' allegations of wrongdoing. *See Churchill Village, L.L.C. v. General Elec.*, 361 F.2d 566, 576 (9th Cir. 2004). Defendant has fought Plaintiffs' claims at every stage of the litigation, filing a motion to dismiss (Doc. 7), transferring venues (Doc. No. 38), and moving to dismiss the amended complaint in this Court (Doc. 63). Subsequently, Defendant successfully received declaratory relief at the summary judgment stage and dismissed the claims of Ursula Williams, one of the original named plaintiffs in this Action. Doc. 77. PHH, along with Ocwen, also reached a proposed settlement in a nationwide class action pending in Florida which threatened to wipe out the claims of the Settlement Class

here. *See* Doc. 94-1, ¶ 19. Plaintiffs anticipate that PHH would continue to defend its position should the case be litigated further. Thus, continued litigation would have been lengthy and expensive, and the possibility of Plaintiffs litigating their claims on a class basis through judgment is uncertain.

Moreover, even if Plaintiffs were to prevail through continued litigation and trial, they still face significant risks as an appeal by PHH would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *State of West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079 (2d Cir.); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) (same). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id.* Accordingly, consideration of these factors support final approval of the Settlement. *See, e.g., Klein*, 705 F. Supp. 2d at 651 (reasonableness of settlement is strengthened when ongoing litigation poses high risk of high costs of time and money) (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

### 2. The Settlement Provides Meaningful, Automatic Payments to Settlement Class Members, With Less than 1% of Settlement Class Members Requesting to be Excluded from the Settlement

Under the Settlement, each Settlement Class Member is entitled to an automatic

payment of his or her *pro rata* distribution **unless** he or she submits a timely request for exclusion. Doc. 87-3 at 8. The method of distributing the Settlement Fund is thus simple and efficient.

Further, the relief provided to Settlement Class Members is significant. As previously noted, the Settlement creates a Settlement Fund of $1,300,000.00, which represents roughly 32.5% of the Convenience Fees paid by Settlement Class Members during the Class Period. Doc. 87 (Joint Decl. of Pulliam and Kauffman) at ¶ 9. After litigating this case for more than three years, reaching a settlement that provides such value to the Settlement Class Members is a meaningful and successful conclusion to the case without imposing a burden on the Class Members to submit a claim to receive the benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132, at *7 (N.D. Ga. Jan. 13, 2020) (weighing reasonableness of settlement benefits that are certain and available now against years of litigation and uncertainty).

The Court has already determined that the notice program in this case satisfies Rule 23 and due process. Doc. 90 at ¶ 14. The Settlement Administrator has now fully implemented the notice program, providing over 99.9% of the Settlement Class Members with notice – exceeding the range endorsed by the Federal Judicial Center. *See* RG/2 Decl. at ¶ 6; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range). There have only been six opt-outs after sending out 47,404 Notices. RG/2 Decl. at ¶ 9. Thus, the Settlement enjoys the support of the overwhelming majority of the Settlement Class Members.

### 3. The Requested Attorneys' Fees and Costs Are Reasonable and In Line with Similar Awards Approved in the Fifth Circuit

As set forth in Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards and Memorandum of Law in Support (Doc. 94), Class Counsel's request for attorneys' fees, litigation costs, and service awards is directly in line with similar awards approved in the Fifth Circuit. *See* Doc. 94 at 10-12. A lodestar cross-check confirms the reasonableness of Class Counsel's fee request. *Id*. at 22-24. Lastly, pursuant to the Settlement Agreement, Class Counsel will not receive any payment until after the Final Settlement Date. Doc. 87-3, at 39. Thus, the percentage requested and the timing of payment weigh in favor of final approval.

### 4. The Settlement Provides for a Non-Reversionary Common Fund

As noted above, there is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a check. Thereafter, any residual funds will be disbursed as a *cy pres* award to Homes for Our Troops, a 501(c)(3) charity. No funds from the Settlement will revert to Defendant. Doc. 87-3 at II(4.7). Thus, the distribution of benefits is fair and equitable. *See Hale v. State Farm Mut. Automobile Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (finding distribution method involving direct payments to class members whose addresses are known to the parties, plus small number of claims forms to others, to be sufficiently effective). Accordingly, consideration of each of these four subfactors weigh in favor of final approval.

### C. The Settlement Treats All Settlement Class Members Equitably, and There Is No Agreement Required to Be Identified under Rule 23(e)(3)

Under the Settlement, there is no unfair or preferential treatment of any Settlement

Class Member. Payments to Settlement Class Members will be made on a *pro rata* basis. *See* Doc. 87 at ¶ 10. Thus, each Settlement Class Member is given fair and equal treatment. Additionally, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, these factors weigh in favor of final approval.

### D. The Factual Record Was Well-Developed Through Discovery and the Litigation Was Sufficiently Advanced

This factor requires the Court to look to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653 (citing *Ayers*, 358 F.3d at 373).

In this case, the Parties completed targeted discovery, and briefed substantive and dispositive motions, including two motions to dismiss and a motion for summary judgment. The discovery that was completed in this case was relied on in mediation and eventually settling the case by evaluating the number of Class Members, unique loans, and the dollar amount of Convenience Fees collected from Class Members. Accordingly, counsel for both sides fully understood the strengths and weaknesses of their positions before they entered into settlement negotiations.

In addition, Class Counsel's significant experience in litigating class actions and similar claims provided useful benchmarks to evaluate the merits of this case and to allow Class Counsel to evaluate the reasonableness of the Settlement here. *See* Doc. 87-1 and 87-2. Accordingly, "[t]he parties … have ample factual and legal information with which to evaluate the merits of their competing positions and to 'make a reasoned judgment about

the desirability of settling the case on the terms proposed.'" *ODonnell*, 2019 WL 4224040,

at *10 (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)).

**E.     The Notice Program Satisfies Rule 23 and Due Process, and Constitutes the Best Notice Practicable**

As set forth above, this Court has already determined that the notice program in this

case satisfies Rule 23 and due process. Doc. 90. The notice program has now been fully

implemented, providing over 99.9% of the Settlement Class Members notice of the

Settlement. What is more, the Settlement Administrator continues to maintain the

Settlement Website and toll-free phone line and respond to inquiries from Settlement Class

Members. Accordingly, the notice provided to Settlement Class Members fulfills all of the

requirements of Rule 23 and due process and constitutes the best notice practicable under

the circumstances.

**F.     The Opinions of Class Counsel and the Settlement Class Representatives**

"The endorsement of class counsel is entitled to deference, especially in light of

class counsel's significant experience in complex civil litigation and their lengthy

opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also*

*ODonnell*, 2019 WL 6219933, at *13 (court must give class counsel's opinion appropriate

weight, noting that class counsel tends to be most familiar with the case). Here, it is Class

Counsel's informed opinion that this Settlement represents an exceptional result and is in

the best interest of the Class. *See* Doc. 87. In addition, each of the Settlement Class

Representatives support the Settlement.

## V.    THE SOLE OBJECTION FILED IN THIS ACTION DOES NOT ADDRESS THE SETTLEMENT AND SHOULD BE OVERRULED

One Settlement Class Member, Esteban Losoya, filed an objection with the Court (the "Losoya Objection"). Doc. 95. However, the Losoya Objection does not address any of the terms of the Settlement, or the Settlement process, or its fairness. Instead it appears to be a criticism of PHH generally, and a request that the Court clean up borrowers' credit histories, turn over the titles to their properties, and erase any borrower bankruptcies. Such claims however are outside the scope of the Settlement, meaning they are not relevant to the matter before the Court. Thus, the Losoya Objection does not articulate grounds to deny approval of the Settlement of the claims before the Court.

Notably, the fact that there is only one objection is an indication that the Settlement enjoys the support of the Settlement Class and should be approved. "The court should also consider the reaction of the class to the settlement when, as here, notice was properly provided. 'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Quintanilla v. A & R Demolition Inc.*, CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir.2005) (finding that a lack of substantial objection indicated that class appeared to be overwhelmingly in support of settlement)); *see also Maher v. Zapata Corp.*, 714 F.2d 436 at 456 (5th Cir. 1983) (noting that a minimal nature of objections is a factor that favors approval); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 at 1018 (S.D. Ohio 2001) (a "diminutive amount" of objectors may signify that a settlement is fair).

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class upon concluding all of the requirements of Rule 23(a) and (b)(3) were satisfied. Specifically, the Court found that: (a) the Settlement Class is ascertainable; (b) the Settlement Class easily satisfies the numerosity requirement: (c) the commonality requirement of is satisfied for purposes of settlement: (d) the Settlement Class also satisfies the typicality requirement of Rule 23(a)(3); (e) Plaintiffs are adequate representatives of the Settlement Class; (f) predominance and superiority are satisfied. Doc. 90 at 2-8.

Nothing has changed since the Court's preliminary ruling. For these same reasons, this Court should grant final certification of the Settlement Class for settlement purposes only.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; (iii) finding that the notice program as set forth in Section 7 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(e) and due process and constitutes the best notice practicable under the circumstances; (iv) awarding Class Counsel's attorneys' fees and costs, and Service Awards to the Plaintiffs, and (v) entering final judgment. A proposed final approval order is attached.

Dated: September 1, 2023

Respectfully submitted,

*/s/ Elizabeth Ryan* .
Elizabeth Ryan (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
617-439-6730
617-951-3954 (fax)
eryan@baileyglasser.com

Randall K. Pulliam (admitted *pro hac vice*)
Edwin Lee Lowther (admitted *pro hac vice*)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 72201
501-312-8500
501-312-8505 (fax)
rpulliam@cbplaw.com
llowther@cbplaw.com

James L. Kauffman (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, Suite 540
Washington, DC 20007
202-463-2101
202-463-2103 (fax)
jkauffman@baileyglasser.com

Patricia M. Kipnis
**BAILEY GLASSER LLP**
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
856-324-8219
304-342-1110 (fax)
pkipnis@baileyglasser.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATION OF COUNSEL

I hereby certify that this document contains 5,453 words, excluding the caption, table of contents, table of authorities, and signature block.

*/s/ Elizabeth Ryan*                .
Elizabeth Ryan

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on September 1, 2023.

*/s/ Elizabeth Ryan*                .
Elizabeth Ryan